[140]                    TONNELE *vs.* HALL.

An instrument propounded as a will, consisted of eight unfolded sheets or pieces of paper, securely attached together at the ends. The writing of the will commenced on the first and was continued on the four succeeding sheets, where it was brought to a close by the usual attestation clause, and was subscribed by the testator and the witnesses. On one of the sheets following the signature *was a map not signed by the testator or witnesses.* The testator owned houses and lots in the city of New-York which he disposed of to his widow and among his descendants. In the body of the will the lots were designated by numbers, with a reference to the map as follows: " *which said lots are designated on a certain map now on file in the office of the register of the city and county of New-York, (a copy of which on a reduced scale is hereto annexed,) entitled map of the property of,*" *&c.* [*particularly describing the map on file.*] *Held,* that the will was subscribed by the testator *at the end of the will,* within the meaning of the statute, and that the execution thereof was valid.

Where a will, otherwise properly executed, refers to another paper already written, and so describes it as to leave no doubt of its identity, such paper, it seems, makes part of the will, although the paper be not subscribed or even attached.

A statute ought to receive such a construction as will best answer the intention of the makers, and this intention may sometimes be ascertained by referring to the causes which led to the enactment of the statute. Per JEWETT, J.

THE will of John Tonnele, deceased, was offered for probate before the surrogate of the city and county of New-York, and was contested on the ground, among others, that it was not executed according to the provisions of the revised statutes. The surrogate overruled the objections and admitted the instrument to probate. The contestants or some of them appealed to the supreme court, where the decree of the surrogate was affirmed. An appeal was then taken to this court. The facts are stated in the opinion of JEWETT, J.

*J. C. Spencer,* for appellant.

*C. O'Conor,* for respondent.

JEWETT, J. The only question argued or made on this appeal is, whether the instrument offered for proof to the surro-

Tonnele *v.* Hall.

gate of the city and county of New-York, and by him ad- [141] mitted to probate, as the last will and testament of John Tonnele, deceased, is executed by the decedent in the manner that a last will and testament is required by law to be executed, to render it valid as such.

It is required by 2 *R. S. p.* 63, § 40, "that every last will and testament of real or personal property or both, shall be executed and attested in the following manner : 1. It shall be subscribed by the testator at the end of the will. 2. Such subscription shall be made by the testator, in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made, to each of the attesting witnesses. 3. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed, to be his last will and testament. 4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, at the request of the testator."

It is agreed that the instrument in question consists of eight sheets or pieces of paper, besides an envelope of uniform size, but of coarse texture. The end of the envelope is brought over the top of these sheets, united about an inch and a half, and over this is a piece of parchment, binding all the pieces, including the envelope, together, by passing over the top about an inch and a half on each side. The binding is secured by a ribbon passing through it and all the pieces of paper several times, from side to side, about an inch from the top, and each joint made by the insertion of the ribbon is sealed with wax in front. The writing of the instrument commences on the first sheet, immediately below the margin made by the parchment binding, in this form : "In the name of God, amen ; I, John Tonnele, of the city of New-York, being of sound mind and memory, and considering the uncertainty of life, do make, publish and declare this to be my last will and testament, in manner and form following, that is to say"—and is continued on that and the four succeeding sheets, (turning over at the bottom of each of the first four sheets,) when it is brought to a close

[142] as follows—"In witness whereof, I have hereunto set my hand and seal, the twenty-second day of October, in the year of our Lord one thousand eight hundred and forty-four." At this point the testator subscribed and sealed the instrument. Following this is an attestation clause, in the usual form of such clauses to wills, which is subscribed by three witnesses. The next sheet is entirely blank, and is succeeded by a sheet on which is written " map of the property of John Tonnele in the ninth and sixteenth wards, from surveys and maps made by Geo. B. Smith and Edw'd Doughty, in 1828 and 1835, by R. Spencer, city surveyor, July 8th, 1842." And also written on the same, " Reduced copy of a map on file in the Register's office in the city of New-York, R. S." This map indicates the position by numbers, &c. of various lots of land in the city of New-York, between the sixth and seventh avenues, and fronting on the 14th, 15th, 16th, 17th and 18th streets. Between the last mentioned sheet and the envelope there is another blank sheet. This instrument, exclusive of the map, contains about fifty folios of 100 words each, of written matter, purporting to set forth, among other things, the manner in which the decedent disposed of his real and personal estate.

The first clause by which any part of his real estate is devised occurs in the second folio, whereby " the brick house on the rear of lot number 73, on the *map hereinafter* mentioned, together," &c. is devised to Ann Hamilton, to hold during her life. A devise of several other lots of his real estate situated between said avenues and fronting on 14th and 15th streets, occurs at folio 15 and onwards, and are described as being " designated on a certain map now on file in the office of the register of the city and county of New-York, (a copy of which on a reduced scale is hereto annexed,) entitled, map of the property of John Tonnele, Esq. in the ninth and sixteenth wards, from surveys and maps made by Geo. B. Smith and Ed'd Doughty, in 1828 and 1835, by R. Spencer, city surveyor, July 8th, 1842, by the numbers 20, 21, &c." In each subsequent devise by which any other of the lots of land laid down upon said map [143] are disposed of, they are described as being " designated

on the said *map*" by certain numbers mentioned, and no reference is made to the *copy* of the *map* annexed.

The point taken by the counsel in behalf of the appellant is, that the execution of this instrument is not in conformity to the *first* and *fourth* requisites of the statute, to be observed in the execution of last wills and testaments ; because, as is insisted, it is neither *subscribed* by John Tonnele, or *signed* by the *witnesses* at the *end* of it. It is contended, that as the map annexed must be regarded as a component part of the instrument, at the time of its execution, and as it is written on the last sheet of the papers composing the instrument, it is necessarily the end of the instrument, where the subscription by the testator and the signing by the witnesses, to constitute it a valid will, should have been made.

It is conceded that if the map had been written on a sheet which was so annexed as to make it the first instead of the last sheet of the paper, thus joined together, there could have been no objection to the subscription by the decedent or the signing by the witnesses at the point where they are made. It is claimed that such a sheet annexed, must be considered as the *beginning* or the *end* of the instrument, merely in reference to its local annexation, without regard to the contents of the writing to which it is annexed. That is, if such sheet happens to be physically annexed, in *front* of the sheet upon which the decedent begins to speak, it is then deemed to be the *beginning* of the instrument or will ; or if so annexed, and constituting the next sheet after the last sheet upon which the decedent has come to a close in disposing of his estate and ceases to speak, it must be deemed to be the *end*.

I cannot agree that such a circumstance can have the effect to constitute the paper referred to, the beginning or end of any instrument, in the body of which reference is made to it, or its contents, whether annexed in fact or not. If the map on file in the register's office or a reduced copy of it annexed, may be treated as a part of the instrument, and I think it may, (*Habergham* v. *Vincent*, 2 *Vesey, jr.* 228 ; *Bard* v. *Seawell*, 3 *Burr.* 1775 ; *Wilkinson* v. *Adams*, 1 *Vesey & Beames*, 445,) its contents [144]

must be incorporated and distributed in it, to the extent of the several references made to it, at the places where made ; and thus the contents of the paper to which the instrument refers, will be deemed constructively inserted, before the point is reached where the subscription by the decedent and signing by witnesses are made. The map then becomes incorporated in the instrument subscribed and signed by the testator and the witnesses. It was said by Wilson, J. in *Habergham* v. *Vincent*, that if a testator in his will refers expressly to any paper already written, and has so described it, that there can be no doubt of the identity, and the will is executed in the presence of three witnesses, that paper, whether executed or not, makes part of the will; and such reference is the same as if he had incorporated it; because words of relation have a stronger operation than any other. Whether the two papers are brought together by being attached, at the time of the execution of the one, or not, can have no other effect than as to the identity of the one referred to. If annexed, the identification may perhaps be more satisfactory in many cases, than it would otherwise be. But the effect or character of it, is not at all changed. The contents of the paper so far as referred to in the instrument executed, become constructively a part of the latter, and in that respect they make together one instrument, although in fact existing in two distinct papers, whether attached together or not.

Among the cases cited on the argument is *Hays* v. *Harden*, (6 *Barr*, 409,) which is said to be directly in point, and decisive of the question here. I have perused that case, and without stating it at large will only remark that in my opinion a material distinction exists between that and the present case.

It is a sound principle, that such a construction ought to be put upon a statute as may best answer the intention which the makers had in view, and that is sometimes to be collected from the cause or necessity of making it, at other times from other circumstances. Whenever the intention can be discovered it ought to be followed with reason and discretion in its con- [145] struction, although such construction may seem contrary to its letter.

The reason and object of the altered provisions of our present statute of wills and testaments, and especially of the provision under consideration, appear to me obvious, especially when compared with the former statutes on that subject, and the course of judicial decisions under them. By the common law a man could not devise his land. (1 *Williams on Ex.* 1, 2 ; *Habergham* v. *Vincent, supra, p.* 227 ; 2 *Black. Com.* 12.) Our statute of 1813 " concerning wills," (1 *R. L.* 364, § 1,) which was a transcript substantially of the provisions of former statutes, authorized the devising of lands by the last will and testament of the owner. And § 2, required that every such last will and testament should be in writing and *signed* by the party making the same, or by some other person in his presence and by his express direction, and that it should be attested and subscribed in the presence of such party by three or more credible witnesses, or else that such last will and testament should be utterly void. So the English statute of frauds required wills of real estate to be *signed* by the testator as essential to their validity. Questions had arisen under these statutes, as to what the legislature meant by the word " signing ;" namely, whether it should be construed in its strict sense, and by analogy to other instruments, or whether it should be liberally expounded and left open as a question of construction upon intention, to be inferred from the facts and circumstances attending each particular case. The construction had been, as well in the courts in England as here, that the writing of the name of the testator in the body of the will, if written by himself with the intent of giving validity to the will, was a sufficient " signing " within the statute. (1 *Powell on Dev.* 74 ; 1 *Jarman on Wills,* 70 ; *Lemayn* v. *Stanley,* 3 *Levinz,* 1 ; *Hilton* v. *King, id.* 86 ; *Pearson* v. *Wightman,* 1 *Cons. Court Rep.* 343.) It had also been adjudged in several cases, that the putting of a seal to the will by the testator merely, was a sufficient *signing* within the statute. (*Lemayn* v. *Stanley, supra ; Wannford* v. *Wannford,* 2 *Strange,* 764.) But that was subsequently denied to be law. [146] (*Smith* v. *Evans,* 1 *Wils.* 313 ; *Ellis* v. *Smith,* 1 *Vesey, jr.* 13 ;

*Grayson* v. *Atkinson*, 2 *Vesey, sen.* 459 ; *Wright* v. *Wakeford*, 17 *Vesey*, 459.)

Thus the old law stood, and the mischief of it was that, as it was unnecessary for the testator to have adopted the instrument after it was finished, by actually signing the same at the close of the will, it did not denote clearly that he had perfected and completed it. To remedy this evil and to prevent future controversy as to whether a will signed by the testator in any other part of the instrument than at the *end*, denoted a complete and perfect instrument, our statute of 1830, (2 *R. S. p.* 63,) requires that "it shall be subscribed by the testator at the end of the will." And the statute of Victoria 1, ch. 26, passed in 1837, requires that the will shall be "signed" at the foot or end of the will, and to avoid the misconstruction which had prevailed as to "signing," the words " subscribed at the end of the will," are used in our statute, and the words " signed at the foot or end of the will," are used in the statute of Victoria. There never was any doubt entertained, as I can find, but that a will properly executed and attested, might by reference to another instrument establish particular clauses, so ascertained by a clear reference, as strongly as if the clauses referred to had been repeated in the will *verbatim*, whether that other instrument is executed or not. The object of the change in the words of the statute, was to insure a signature of authentication, distinct from, and at the close of, the descriptive and disposing parts of the will ; and the practice of making such references has not, as I am aware, at any time resulted in any mischief or inconvenience. I think that the subscription by the testator to the will in question, as well as the signing by the witnesses, were made in strict compliance with the statute, and that therefore, the order or decree of the court below should be affirmed.

Decree affirmed.