Hawes, J.
The affidavit in this case is made by Moses ft. Crow who describes himself as the agent or attorney of Lyman Mallary, the plaintiff. From his statement which is uncontradicted, and upon which the attachment herein was granted, it appears that Bradford Thomas &Co. of Boston, sold and delivered to defendant certain goods and merchandise, and there is due from the defendant on account of such sale the sum of $447.95. That the said firm has assigned the claim to the plaintiff, which assigment is in possession of the affiant. Full and unquestioned particulars of the transaction are set forth as within the knowledge of the deponent, and the new residence of the defendant is admitted. It also appears that the plaintiff is absent from the city, and is unable in the nature of things to make the affidavit which is therefore made by the agent who states “ that there is now due to said plaintiff thereon from the said defendant Allen, the said sum of four hundred and forty-seven dollars and ninety-five cents, over and above all offsets and counterclaims known to deponent, or to said plaintiff.”
The court below held that this allegation was insufficient under the provision of section 636 of the Code, relying upon the case of Cribben v. Schillinger, 30 Hun, 348.
The question here presented is pre-eminently technical, but its determination involves very grave consequences, especially in this city, where owing to the non-residence of principals or their necessary ab *340 sence, agents are charged with the duty of protecting their interests in all their different aspects, legal and •otherwise.
If it is established that the plaintiff must himself make the affidavit, or even be communicated with, before the writ can issue, a layge proportion of the business of the courts arising out of this provisional remedy will be eliminated; and the fullest possible discussion of the question would therefore seem to be justified.
Now it is possible that some distinction, might be drawn between the case at bar and Cribben y. Schillinger, but I think that it must justly be said that they would be insufficient to take it out of the control of that case, and if it be held that the principle enunciated in Cribben v. Schillinger is to be deemed the law governing this provsion of the Code, the order below vacating the attachment must be affirmed.
The ruling that Cribben v. Schillinger has been generally accepted and followed by the courts at special term, and I should deem it presumptuous to question its apparent force, but for the fact that it is an interpretation of a statute which is relatively new, and from the further fact that there are dicta running through the different decisions touching this question, that would, in themselves, justify me in dissenting from the conclusions reached in that case as govern-' ing the construction of section 636 of the Code.
Now it is undoubtedly true that this proceeding is statutory and special and must be strictly pursued, and that the statement of the claim is a material part of the affidavit, as it determines the amount of the defendant’s property to be covered by the process, and the absence of a proper allegation in that behalf will render the proceedings absolutely void. We are therefore led to consider what is actually required by this provision of the Code in order to confer jurisdiction. *341 “To entitle the plaintiff to such a warrant he must show by affidavit to the satisfaction of the judge granting the same. . . that the plaintiff is entitled to recover a sum stated therein over and ‘ above all counter-claims known to him.” The manifest intention pf this provision is to restrict, so far as possible, the amount of the claim, and it is well settled that it is not necessary to use the express language of the statute to establish the fact (Ruppert v. Haug, 87 N. Y. 144.)
It is only necessary that the judge granting the attachment shall be satisfied by proper legal proof that no counter-claims exist.
If the plaintiff himself makes the affidavit and swears positively that no such counter-claim exists, without adding the words “known to him,” it would be manifestly good and not subject to any possible criticism, for he makes oath to its truth in all the wide scope which inference, information, or the deepest possible knowledge could suggest. The expression “known to him” was doubtless intended, as is suggested in Lamkin v. Douglass, 27 Hun, 518, to be “in relief of the conscience of the affiant,” as possibly there might exist some counter-claim of which he was ignorant; but if he is willing to take the chances of such a sweeping affirmation it does not rest with the defendant to complain, for all, and more, has been sworn to by him than is required by the statute (See Alford v. Cobb, 28 Hun, 22).
It will be urged however, by the respondent, that while it may be safely conceded that a statement positively sworn to by the plaintiff himself is sufficient to satisfy the statute, yet, in the case of an agent, the principle would not apply inasmuch as it appears that any knowledge possessed by the plaintiff himself, must, in the nature of things, be a matter of information and belief, so far as concerns the agent, and he has not brought himself within the rule laid down in Steuben *342 Co. Bank v. Alberger, 78 N. Y. 252, inasmuch as he has not shown the sources of his information or established the fact that the parties who possessed the information were absent and their deposition could not be obtained. Now, it is clear in the case at bar, and is admitted upon the record, that the agent knew all about the transaction and knows that no counter-claim exists in so far as this particular matter is concerned, but of course he did not know and could not know, what claims might exist in .defendant’s behalf in the possible nature of a cross-action having as its basis something wholly-disconnected with the plaintiff’s business as a merchant and dealer of the goods in question, but which would be none the less a counter-claim, under subdivision 2 of section 501 of the Code. The objection would therefore go only to the extent of the legal force of the expression “known to plaintiff,” and dealing with the question on that basis, we are led to inquire, in the first place, what fact as such, is there, which would justify the court in holding that the proof is not satisfactory.
The plaintiff was admittedly absent, and the reason why his affidavit is not furnished is sufficiently shown; What facts, within the purview of the decisions, affec-j ting this question, exist as creating information on the part of the agent and which it is deemed necessary should be shown to the court as an essential basis of jurisdiction? There is only one fact which by any possibility can be produced in that behalf, and that is a primary fact in itself and admits of no circumstances or facts as establishing its verity, and the announcement of its existence creates all the proof possible. The mental condition of Mr. Mallary, or rather his inner conscience as affecting his knowledge of what the. defendant Allen might deem a possible cause of action against him, constitutes, so far as I can discover, the only remaining fact which is unknown to the court, *343 but that even is not unknown, for Crow has sworn positively that it does not exist in Mallary5 s mind, and is there any just reason for the court to hold that Crow is not possessed of that knowledge % There is not only every presumption and likelihood in its favor, but a sworn statement of its truth.
But it is claimed, that none the less it is on information, and the ground of it should' be stated, and admit for the moment, that it is so, what evidence of its truth or falsity can be shown ? For a party who is making a statement of a fact on information to say that he has received information of that fact, and that that constitutes evidence of the fact, is trifling with every process of logic and common sense, and in saying so it will be borne in mind, that I am discussing the truth or falsity of Mallary5 s knowledge, and it must go to that extent, or the argument of the respondent fails altogether as establishing the- fact as a jurisdictional pre-requisite, for, if it be conceded for a moment that the demonstration of Mallary5 s knowledge or want of knowledge is not to be essentially shown, its jurisdictional element is gone at once. It is quite clear that no agent can make a satisfactory affidavit in an attachment proceeding, if full force and effect is to be given to this doctrine, for no man can swear to another’s knowledge, and furnish satisfactory proof of any existing “facts,” which would justify the court in determining by any biological or metaphysical research the intellectual status of the other person’s mind at any one particular moment.
If Cribben v. Schillinger is to be followed in its construction, then proper and legal proof of the knowledge of the plaintiff, or rather his ignorance, must be affirmatively established, as a prerequisite to jurisdiction, and the pleader must be held to the strictest proof of a statutory requirement. If, on the other hand, it cán be deemed a modification of an absolute *344 affirmation designed to relieve the conscience of the affiant, then an entirely different rule will prevail.
Assuming the correctness of the first construction, we are led to consider the character of the knowledge required by this exacting provision. A counter-claim must be one of the two following causes of action : (1) A cause of action arising out of the contract.or transaction set forth in the complaint as the foundation of the plaintiff’s claim, or connected with the subject of the action. (2) In an action on contract, any other cause of action on contract existing at the commencement of the action. If the rule is to be applied as above, it is clear that the pleader must show that the plaintiff has no knowledge of both possible causes of action, and it is equally clear that no agent in the world can make an affidavit covering both causes of action on any recognized principle which governs statutory and jurisdictional requirements. I am well aware that the hardship of a rule of law does not establish its invalidity, but I refer to it now, and shall hereafter urge it as tending to determine, in a certain degree, the intent of the legislature in enacting the statute.
It is held, in Smith v. Arnold, 33 Hun, 484, and in other cases, that an agent can make an affidavit, and it is suggested that possibly the agent, being in sole and absolute charge of the business between the parties could make it with even greater propriety than the plaintiff himself, but unfortunately all the information in the universe as to those transactions would be but one step in the proof of knowledge, for non constat, but that there may still arise a cause of action under subd. 2 of section 501. It follows, therefore, that satisfactory proof must be produced before the court that principals in Bordeaux or Vienna, for instance, who have perhaps never heard the names of those defrauding debtors, are ignorant of any counterclaims. But what proof of such want of knowledge *345 will be “satisfactory?” The only possible proof of ignorance of a possible fact requires a men tal diagnosis which only the person himself can give. What creates in his mind his opinion as to the non-existence of any such claim, can be known only to him, but the very mental operations which produce such a result are processes of ratiocination and intellectual deductions, that constitute, in my opinion, the only veritable “ facts,” that a court could consider as to the truth of one’s knowledge or ignorance, and these no agent can give. To say that the court is not satisfied with the statement of an agent because it is on information, and then to say that it is satisfied when the agent says he has been informed, and gives no other circumstances as establishing the alleged fact, is reasoning in a circle. The court, in Cribben «. Schillinger, intimates that it might have been sufficient, if the agent had stated in his affidavit that he had been informed by his principal of his want of knowledge. But he had already sworn to it as an absolute fact, which covers, in the very nature of things, all sources of the agent’s knowledge, including information, and yet, the court insists, that, from the circumstances of the case, it is apparently on information, but would still be satisfied if the agent had stated that it was on information. It is but proper that I should say that the learned court declined to express an opinion as to the effect of such an averment as establishing in itself any additional fact which would tend to confer jurisdiction.
In Lampkin v. Douglass,* 63 How. Pr. 49; the court states that such facts should be stated as will satisfy the court that the plaintiff has no knowledge upon the subject, because the entire transaction was with the affiant. But what if it was ? A counter-claim might still exist in behalf of defendant, for, although the, *346 agent had exclusive knowledge of the whole transaction, yet the fraudulent debtor could dispose of .his property without interference if the principal cannot be reached, or had forgotten to inform the agent of his ignorance, before his departure, and even that would be insufficient in so important a matter as a jurisdictional requirement, for its truthfulness must be shown at the time the application was made and the affidavit sworn to. ' < '
How there cannot, in my opinion, be any shifting or equivocal construction of this participial clause. The words “known to plaintiff” must be held to virtually constitute an independent sentence in syntax, and to be an issuable allegation in law, considered by itself and within its strict letter, or else a mere limiting clause and non-essential in its character, so far as affects the question of j urisdiction. The interpretation admits of no compromise as being subject to varying facts or conditions, and the court is bound to accept one or the other of these propositions. It is my opinion that upon any principle of grammatical or legal construction, the expression “known to plaintiff ” presumes no such substantive character as is claimed for t it. Its participial form is clearly designed to modify the effect of an unqualified affirmation that no possible counter-claim existed whether made by the plaintiff or his representative. This limiting clause, manifestly inserted for the plaintiff’s benefit, has been made to destroy the whole effect of the statute in open defiance of the maxim, that an interpretation which gives effect is preferred to one which makes void. This rule could not, of course, be invoked in cases where violence would be done to the construction, but to my mind the interpretation suggested is the only one in harmony with the fairest use of language viewed in its strict grammatical relation, and it clearly comports with the *347 spirit and purpose oí the statute viewed as a remedial measure.
The provisions as to non-existence of counter-claims exist in the statutes of Michigan, Missouri, Illinois, Oregon, Ohio, South Carolina, Tennessee, Colorado and Idaho, and are substantially like our own as embodied in section 636 of the Code, as they provide that the plaintiff shall set forth the amount of the indebtedness “after allowing all just credits and set-offs” or “all legal set-offs and counter-claims.” In Michigan, Oregon, Tennessee and Colorado the provision is that the plaintiff shall set forth “the amount of the indebtedness, as near as may be, over and above all legal set-offs and counter-claims.” The codifier doubtless had in mind the qualifying provision contained in the statutes last referred to, and instead of requiring him to state the amount of the indebtedness “ as near as may be above any counter-claims,” he was required to state the amount of the indebtedness above any counter-claim of which he at that time was cognizant —or could remember, and that, the one could consistently be deemed tantamount to the other, but if the plaintiff or his agent was willing to swear positively to the fact it would be clearly sufficient.
If such was at all the purpose (and it is clear to my mind that it was), then the intent to make it a substantive and issuable allegation must be abandoned, and the construction above given to it is not only consistent, but is the only one maintainable. The decisions in those States would seem to sustain this construction. The object to be attained by the enactment of section 636 is very manifest, and the intention of the legislature furnishes a just legal basis of interpretation. “It is a sound principle that such a construction ought to be put Upon a statute as may best answer the intention which the makers had in view, and that is sometimes to be collected from the cause or necessity of making *348 it, at other times from the circumstances ; whenever the intention can be discovered it ought to be followed with reason and discretion in its construction, although such construction may seem contrary to its letter.” When any words are obscure or doubtful, the inten tion of the .legislature is to be resorted to in order to find the meaning of the words. A thing which is within the intention of the makers of a statute, is as much within the statute as if it were within the letter of the statute; and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers, and such construction ought to be put upon it as does not suffer it to be eluded (Tonnele v. Hall, 4 N. Y. 140). How, in my view of the grammatical structure of the sentence, there is nothing doubtful about the meaning of this limiting clause, and it could safely be treated as surplusage so far as the question of jurisdiction is concerned, but even if it were otherwise the plain purpose of the statute is to grant an attachment in all cases where the fraud or non-residence is established, and the amount of the plaintiff’s claim is honestly, fairly and fully set forth after deducting any indebtedness, set-offs or counter-claims that may reasonably exist or be known ; and that will be measured by the business relations existing between the parties which an agent may be conversant with, as well as a principal. To divert the whole question into a discussion of the plaintiff’s state of mind, or the ground of his particular knowledge, is to clearly “elude” the statute, to misconstrue the plain purpose of language, and to permit the mischief which the statute was intended to redress. I have been unable to find any case involving the precise questions here raised, except the case of Cribben v. Schillinger (supra), but they are incidentally touched upon in the following, among the late reported cases (Smith v. Arnold, 33 Hun, 484; Murray v. Hankin, 30 *349 Hun, 37; Ruppert v. Haug, 87 N. Y. 141; Bertram v. Bernett, N. Y. Daily Reg. Nov. 13,1884; Dolz v. Atlantic, &c. Trans. Co., 3 Civ. Pro. R. [Browne] 162 ; Bates v. Pinstein*). In the case of Buppert v. Haug, there was no allegation whatever, as to the existence or nonexistence of any counter-claim, and was therefore, manifestly defective. In Murray v. Hankin, the court stated that if an agent had sworn to the non-existence of the counter-claim to the knowledge of the plaintiff, it would have been sufficient, but this was a dictum, and there was.no actual ruling upon the question, as it was not involved in the case. In the other cases cited the question was only incidentally referred to, but I feel bound to say that in so far as ic is referred to they afford little encouragement. I do not deem it necessary to discuss the question of the conclusive character of an affidavit positively sworn to within the ruling of Ballouhey v. Cadot, 3 Abb. Pr. N. S. 123; Evans v. Holmes, 46 How. Pr. 517, and Nicolls v. Lawrence, 30 Mich. 395, and later cases, for in my opinion, if full force is to be given to the expression of plaintiff’s knowledge, when properly construed, the affidavit is sufficient as satisfying the principles applicable to the state of facts here presented, for, as I have already stated, I am of *350 the opinion that the proof of this limiting clause is not essential to confer jurisdiction.
The fair and rational construction of this provision as I comprehend it, is that the court shall be placed in possession of all the facts connected with the transaction by a person who is thoroughly acquainted with it, in all its phases, who knows that there are no counter-claims arising out of it, and whose relations to all the parties in interest are such as to fairly justify him in stating on- oath that no counter-claims or offsets exist, or can fairly or reasonably arise from any other source, and that this is all that is required under the provision of this section of the Code, and that absolute proof as to the plaintiff’s knowledge is not essential to confer jurisdiction upon the court; and I am led to this belief by what I deem to be the strict grammatical force of this limiting clause as well as by analogous enactments in other States, where a similar modifying clause is found, and also by the plain purpose and intent of the legislature in its enactment whifch justifies an interpretation that seems to me most reasonable and in no respect inconsistent with well settled rules of construction. The order should be reversed with costs to the appellant to abide the event.

 Reversed, in 37 Hun, 517.

 In Bates v. Pinstein (N. Y. City Court, Special Term, December, 1884), an affidavit by an agent was held insufficient on motion to vacate the attachment.
McAdam, Ch. J. The affidavit is made by an agent and salesman of the plaintiffs, and he swears that the sum demanded “is due the plaintiffs over and above all counter-claims and offsets.” There is nothing showing any knowledge in the agent of the fact whether the defendant has counter-claims or offsets, or any admission on the subject made by the defendant, nor is any reason assigned why the affidavit as to no counter-claims was not made by one of the plaintiffs. The affidavit is therefore defective (Kneeland on Attachment, § 445; Murray v. Hankin, 30 Hun, 37; Cribben v. Schillinger, 30 Hun, 248), and for this defect the attachment must be vacated.