Daniels, J.
The testator died in October, 1818, having made and executed his last will and testament on the 12th of the preceding month of January. By this will he dis *331 posed of all his estate, real and personal. By the fourth paragraph, or subdivision of the will, he directed the residue and remainder of his estate not previously disposed of, to be divided into fifty equal parts, and gave twelve of such parts to his son, Christopher E. Eobert, Jr.; eleven of such parts to his son, Frederick Eobert; twelve of such parts to his son, Howell W. Eobert; five of such parts to his daughter, Jane E. Corning; and ten of such parts to the trustees of Eobert College of Constantinople. The disposition of these shares was made subject to certain contingencies which are not required to be noticed, inasmuch as the immediate legatees are all still surviving, and those contingencies related to the disposition of the respective shares provided for them, in case of the decease of either of the testator’s children, or of a discontinuance of the college itself. In his lifetime, the testator advanced to his son, Frederick Eobert, to enable him to go into business, the sum of $20,000, and he purchased for his daughter, Jane E. Corning, a house and lot known as No. 8 East Fortieth street, in the city of New York, for which he paid nearly the sum of $50,000. This advance of "the $20,000 to his son, Frederick, was made by the testator on or about the 13th of February, 1864, and the house and lot was conveyed to Mrs. Corning in the same year. In the settlement of the executor’s accounts, this sum of $20,000 was charged to Frederick Eobert, and the sum of $50,000 was charged to Mrs. Corning. They respectively excepted to these clíárges, and the appeals from the decision of the surrogate present the sole and only points, whether these allowances or credits to the executors were legally made, and that depends upon the construction to be given to the sixth sub-division of the testator’s will, which directed that
“All moneys or indebtedness, which shall appear upon any inventory or ledger or books of account, kept by me, or under my direction, charged as due to me from any or either of my said children, or Robert College, of Constantinople, during my lifetime, and as an outstanding or unsettled account at the time of my decease, whether with or without security, shall be considered as forming part of my estate mentioned or referred to in the fourth article of this my will, and a discharge from such indebtedness by my executors shall be deemed and taken as an equivalent to an equal amount paid such college, child or children, on account of its, his, her or their share and portion under this my will.
“ And my executors are hereby directed to deduct the amount of such indebtedness from such respective share or portion, but no interest is to be charged upon or added to any such indebtedness except in case a bond, note, or other obligation securing such indebtedness be found among my assets, upon which said bond, note or obligation interest has been paid or charged, in which case the said indebtednesss shall continue to be charged with interest.
“ Any items or charges which may appear in any account of my private, personal or family expenses s' all not be included or charged as such indebtedness. Ror shall any moneys which shall appear on my books charged to either of my said children to a furniture or allowance account be debited to such child •on the settlement of my estate, but the same is considered as a gift made by me to such child during my lifetime.”
*332 He appears to have been a person who was more than usually careful and methodical in keeping accounts of his. affairs, and those accounts were in. part kept with his children.
That appears to have been done pursuant to an intention existing in his mind at the time when these advancements were made, to charge them to these two children, to be finally deducted out of their shares of his estate. Upon these subjects particular statements were entered in the books kept under his control and direction. That relating to the moneys advanced to his son Frederick was in these words:
• “Advanced to Frederick Robert, on account of his portion of my estate in order to enable him to go into business, which is to be charged to him on settlement of my estate, but no interest, $20,000.”
That relating to Mrs. Corning, consisted of this statement:
“Paid to John H. Sherwood for the house and lot, No. 8 East Fortieth street, which I have given to my daughter, Mrs. Jane R. Corning, by deed from the said Sherwood, as her separate property, and as a part of her share in my estate, $50,000. I charge the amount to her, but though counted as part of my assets, no interest is to be charged thereon.”
These entries were clearly expressive of the design of the testator, that the amount so advanced and charged upon the final adjustment of his estate, should be deducted from the shares to be received, by the persons against whom the charges were made, and the accounts kept by or for him, under his directions, and in his books, evinced the continued existence of that intention. By the account kept with Mrs. Corning, which was in the form of a debtor and credit account, she was charged with this sum of fifty thousand dollars, on the 6th of May, 1864, and it was continued in the account to the 1st of January, 1874, when the final balance was brought down against her, of the sum of fifty thousand dollars. In a like form the account of his son Frederick Robert was kept, who was charged with the twenty thousand dollars on the 22nd of February, 1864. This account was continued by the addition of other items until the 1st of January, 1876, when the balance was brought down consisting of the sum of twenty thousand ■ dollars. It also appeared that the testator was in the habit of making yearly inventories of his estate, containing these items, and specifying them as unavailable portions of his estate, and in several of the inventories these amounts were mentioned as being due, the one from Frederick Robert, and the other from Jane R. Corning. The last of the inventories was made in the year 1877, shortly before the execution of the will. These accounts and inventories cor *333 respond with the references contained in the sixth subdivision of the will, and to determine the effect of that, are required to be read, with this subdivision, to ascertain the intention of the testator. Tonnele v. Hall, 4 N. Y., 140 ; Langdon v. Astor’s Executors, 16 N. Y., 9.
And that was so considered and held when this will was previously before the courts in Robert v. Corning (23 Hun, 299, and 89 N. Y., 225). To the same effect is Lawrence v. Lindsay (68 N. Y., 108). It is true that in and of themselves, they do not become operative as an integral part of the will without proof of the fact of the moneys having been advanced or the indebtedness having been created, but in this case that proof was made, and it was shown as a matter of fact that Frederick Bobert did receive the sum of $20,000 to enable him to go into business, and that he went into business with it as his capital. It was also shown that the sum of $49,379.28 had been advanced for the purchase of the property conveyed to Mrs. Corning, and that the testator had charged her for the property, which in fact was conveyed to her, this sum of $50,000. The transactions referred to in the accounts and inventories were not fictitious or arbitrary, but were actual transactions, which the testator, for the purposes of the settlement of his estate, designated and treated as an indebtedness from his son Frederick, and from his daughter Mrs. Corning. The references contained in his accounts, and in the inventories yearly made, by or for him, and under his authority, indicate this to have been the manner in which he regarded these items of advancement. They were intended to be, as they were, irrevocable, so far as the recipients of the money and property are to be regarded,, but at the same time as so much of the estate of the testator advanced to each of these persons, for which in his judgment, as a merchant accustomed to accounts, they had become for the purposes of the settlement of the estate, indebted to it, and which sums were to be deducted from their respective shares in its final adjustment. It is true that these charges are not strictly, or legally speaking, matters of debt from the persons against whom they were made, but they appear to have been so within the significance of the terms employed by the testator. He understood that to be their effect manifestly for the reason that they were to be accounted for in the settlement and division of his estate, and it was upon that undertaking that the sixth paragraph of his will seems to have been framed. This understanding was definite and uniform, as well as long continued on his part It originated when the advances themselves were made, and was never swerved from, or overlooked, down to the period of the execution *334 of his will, and the facts are such as to leave no well grounded room for doubt but that he intended in the settlement of his estate that these deductions should be made from the shares of the persons who received the money and the property.
It has been suggested that the preceding decisions construing the testator’s will, excluded the liability of the recipients of this money and property from this accounting. But whether they were so hable, or not, does not appear to have been a point in controversy when those decisions were made. These provisions of the will were passingly considered and they were held generally to evince the intention, that the testator meant to say that only advances or actual indebtedness, which had taken the forms prescribed, should be treated as advances to be deducted from the shares or portions of his several legatees under the will. 23 Hun., 305. And that the sixth section was intended to provide simply that any actual indebtedness found charged concurrently therewith on the testator’s books of account should go in diminution of the payments to the several legatees as a part of their shares respectively. 89 H. Y., 242. But no other rule is required to be observed -to bring these charges within the operation and effect of the sixth paragraph of the will.- The language of the first part of the paragraph itself, confirms this construction. For it requires:
“All moneys or indebtedness, which shall appear upon any inventory or ledger or books oí account, kept by me, or under my direction, charged as due to me from any or either of my said children, or Robert College of Constantinople, during my life time, and as an outstanding or unsettled account at the time of my decease, whether with or without security, shall be considered as forming part of my estate mentioned or referred to in the fourth article of this my will, and a discharge from such indebtedness by my executors shall be deemed and taken as an equivalent to an equal amount paid such college, child or children, on account of its, his, her, or their share and portion under this, my will.”
The accounts upon the testator’s books, and the charges appearing upon his inventories, are clearly within this description. The amounts are charged as due to him from these two of his children, as outstanding accounts at the time of his decease, and correspond with the description contained in this part of the sixth paragraph of the will. And that this was his understanding appears further by the concluding paragraph of this subdivision, which was framed to limit and restrain the effect of that portion which has just been cited, for by it he exempted from its operation, any items, or charges, appearing in any account of his private, personal or family expenses, and moneys on either of his books charged to either of his children, to a furniture or allowance account. Those were declared to be considered as gifts made by him to such child, during his lifetime, and consequently not to be brought into the settlement of *335 Ms affairs by Ms executors. These exceptions are significant, for if it had been the design of the testator to exclude the accounts against his son Frederick, and his daughter, Mrs. Corning, for the advancements which were made, it is-but reasonable to suppose that the intention would have been expressed in tMs part of the will. And Ms omission to express that design confirms the conclusion as a matter of fact, that the advancements made were intended to be accounted for under the preceding directions contained in tMs paragraph.
There is no ground for presuming that these advancements were adjusted by the testator before the division of the residue and remainder of his estate was made in the fourth paragraph, for by the sixth paragraph of the will the executor's were the persons who were to discharge the indebtedness, to be deducted from the shares of the persons entitled to participate in the division of the remainder of the property. The discharge from such indebtedness was directed to be deemed and taken as an equivalent to an equal amount to be paid, and the direction was unequivocally given for the executors to deduct the amount of such indebtedness from such respective share or portion. These directions imposed the obligation upon the executors to make the deductions, and are clearly adverse to the idea that the testator himself had made them in adjusting and declaring the distribution of the different shares in his estate.
' It has been urged that this construction will disappoint and defeat the presumption arising from his filial relations with, his children, wliich would indicate the probability to be that they should all equally participate in the enjoyment of his estate. But that does not follow, and if it did it would be ho legal ground for construing the language employed by him, differently from the sense in which he seems to have intended it should be understood. The property conveyed to Mrs. Corning advanced in value and was ultimately sold for the sum of $10,000, and the use which she had of it, and the rents derived from its occupancy, while it was possessed by tenants, would bring this sum to very near a fifth in value of the testator’s property. But if it would not, it could not legally change the disposition wMch should be made of this part of the case. It may also very well be inferred from an entry made in the testator’s books, that he intended to reduce her share in the estate below that of either of heir three brothers. This entry was made after she had abandoned the possession of the house and lot conveyed to her, which adjoined the premises occupied by the testator. After that was done she went to Europe and appears to have taken up her residence in Zurich, and it *336 was probably with reference to that change that the testator caused, or made, the entry in his books having reference to this fact. That entry indicated his disappointment and dissatisfaction in these words :
“ Having failed by the purchase of the house, No. 10 East Fortieth street in keeping my daughter, Jane R. Corning, and her family next door to my own residence, as they went to Europe in Eovember, 1867, much to my disappointment, and as she has recently sold the house for §70,000, I charge her with this amount to make the $50,000, at which I told her it would appear on my books and form that much of her share in my estate, $620.72.”
And it discloses a reason why he may not have considered her as favorably entitled to his property as he did the claims, or rights of his other children. ■
A ground of dissatisfaction also seems to have existed on his part with his son Frederick Robert. He Was desirous that this son should engage in business similar to his own, but his tastes and disposition were more for mechanical courses of employment and to perfect himself in them while he was in Europe, he states that he spent “a great deal of time there studying up at the machine shops and railroads, and all that, with a special purpose in view of following that up as a profession, as a part of my education and training.” Whether the testator’s dissatisfaction was prudent or judicious it is not necessary to consider. It is sufficient that it appears to have existed, and for that reasan to some extent, to account for this diversity in the disposition of his estate. What the court is required to do is to determine the intention pervading the making and execution of his will, and when that shall be done, as these provisions have already been held to be lawful they must be carried into effect.' For in the administration of the law concerning testamentary dispositions of property, it is required where the intention has been lawfully expressed, that it shall be by the courts carried into effect. Lytle v. Beveridge, 58 N. Y., 592, 598. Where it was held that “the intent is to be gathered from the will, and not the subject of conjecture, and words which have acquired a fixed legal meaning must be intended to have been used in the sense which has been impressed upon them, unless it is apparent that they were used by the testator in a different sense.”
The doctrine that the intent of a testator is the guiding and controlling rule of interpretation, requires not unfrequently a disregard of the usual technical meaning of words and phrases, and, when necessary, such technical meaning must yield to the evident intent of the testator.” Id., 598; Phillips v. Davies, 92 N. Y., 199.
The testator has expressed his intention concerning the moneys advanced by him with reasonable clearness.- The *337 language he has used was intended to refer to and include these advancements. He regarded them each as an im debtedness due to his estate outstanding at the time of his decease, and to be settled by the executor by deducting the amounts from the shares of the persons who were considered by him. to be hi this manner indebted. And in the settlement which has been made and sanctioned by the decree of the surrogate, this course was followed. The deductions required were provided for, and, after making them, the shares so diminished have been directed to be paid over to these two legatees respectively. The decision which he made for the reasons assigned in his opinion, as well as those already given, is deemed to be legally accurate, .and it should be affirmed, leaving the question of costs to be settled at the time of the entry of the order.
Brady, J., concurs.