THE SISTERS OF CHARITY OF ST. VINCENT DE PAUL, Respondent, *v.* MARY KELLY et al., Appellants.

67　409
124　457
124　467

Where the name of a person appears to an instrument purporting to be his will, and he acknowledges to witnesses that it was subscribed by him, or for him, and adopted by him, it is a good subscription of the paper as a will; but in the absence of a subscription in the presence of the witnesses, there must be substantially such an acknowledgment.

The provision of the statute of wills (2 R. S., 63, § 40), requiring a testator to subscribe "at the end of the will," means the end of the instrument as a completed whole, and where the name is written in the body of the instrument, with any material portion following the signature, it is

---

not properly subscribed, nor can it be claimed that the portion preceding the signature is valid as a will.

John Kelly presented to two persons a paper, which he stated he had drawn as his will, and requested them to witness it. The last clause of the instrument was as follows: "I make, constitute and appoint Edward McCarthy to be executor (*J. Kelly*) of this my last will and testament, hereby revoking all former wills by me made." There was no evidence that the testator wrote the name "J. Kelly," save his statement as to drawing the will. After the two witnesses had signed, Mr. Kelly wrote his name, in the attestation clause, so that it read: "Subscribed by *John Kelly*, etc." There was no other signature. *Held*, that a refusal to admit the instrument to probate was proper; that the signature in the attestation clause was not a due execution, as it was written after the witnesses had signed their names; that the writing of the name "J. Kelly," in the last clause, if written by the testator, was not a valid subscription: First. Because he did not present that name to the witnesses for their attestation, and the subsequent signing precluded the idea that he wrote it or adopted it for his signature to the paper as a will. Second. Because the place where the name appears is not the end of the will.

*Sisters of Charity* v. *Kelly* (7 Hun, 290) reversed.

*Baskin* v. *Baskin* (36 N. Y., 416), *Willis* v. *Mott* (36 id., 486), *In re Woodley* (3 S. & T., 429), *In re Cassmore* (1 L. R. Pro. & Div., 1) distinguished.

(Argued November 22, 1876; decided December 5, 1876.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, reversing a decree of the surrogate of the county of New York, which adjudged that an instrument presented for probate as the last will and testament of John Kelly, deceased, was not properly executed and attested, and refused to admit the same to probate, and remitting the proceedings to said surrogate, with instructions to admit the same to probate. (Reported below, 7 Hun, 290.)

Of the last clause of the instrument, so presented for probate, and the attestation clause, the following is a copy, with the signatures as they appear:

"Likewise, I make, constitute and appoint Edward McCarthy to be executor (J. Kelly) of this my last will and testament, hereby revoking all former wills by me made.

"In witness whereof, I have hereunto subscribed my name

and affixed my seal, the 24th day of July, 1874, in the year of our Lord one thousand eight hundred and sixty.

"*Witnesses :*

"EDWARD McCARTHY.

"DANIEL VAN CLIEF.

"Subscribed by John Kelly, the testator named in the foregoing will, in the presence of each of us, and at the time of making such subscription the above instrument was declared by the said testator to be the last will and testament, and each of us, at the request of said testator, and in ―― presence, and in the presence of each other, sign his name as a witness thereto at the end of the will.

"Residing at 7 Clark street.

"Residing at No. 11 Sullivan street."

The instrument was partly printed and partly written.

It appeared from the evidence of the witnesses, McCarthy and Van Clief, that the testator presented the instrument to them, saying : "I drawed up a will for fear any thing might happen me before coming back ; in case there was any discussion about the trifle of money I have, I want you to witness this will." At the time, the name "J. Kelly" was written in, as it appears, in the last clause. The witnesses then signed their names, and thereafter the testator wrote the name "John Kelly," as it appears in the attestation clause. Further facts appear in the opinion.

*Otto Horwitz* for the appellants. The witnesses to the will should have signed after the will was signed by the testator. (*Jackson* v. *Jackson*, 39 N. Y., 153, 163.) The will was not signed by the testator at the end, as required by the statute. (Redf. L. and Pr. Sur. Courts, 75, 76 ; Wms. on Exrs., 65 ; *Smee* v. *Bryer*, 6 Notes of Cases, 420 ; *In re Milward*, 1 Curt., 912 ; *McGuire* v. *Kerr*, 2 Bradf., 244, 257 ; *Remsen* v. *Brinkerhoff*, 26 Wend., 325 ; *Heady's Will*, 15 Abb. Pr. [N. S.], 211–219 ; *Jackson* v. *Jackson*, 39 N. Y., 153 ; *Hoysradt* v. *Kingman*, 22 id., 372.) A will must be signed by the testator, in the presence of each of the witnesses, or the signature

acknowledged by him to have been made in their presence. (2 R. S., 7, § 40 ; *Chaffee* v. *Bap. Mis. Cor.*, 10 Paige, 85, 92 ; *Remsen* v. *Brinkerhoff*, 26 Wend., 331 ; *Lewis* v. *Lewis*, 11 N. Y., 220.)

*James A. Deering* for the respondents. The will was properly subscribed by the testator and the witnesses. (*McGuire* v. *Kerr*, 2 Bradf., 257 ; Redf. on Wills, 703 ; *Conboy* v. *Jennings*, 1 S. C. R., 622 ; *Cohen's Estate*, 1 Tuck., 286 ; *Hitchcock* v. *Thompson*, 13 S. C. R., 279 ; *In re Gilman*, 38 Barb., 364 ; *Townele* v. *Hall*, 4 N. Y., 140 ; *Thompson* v. *Quinby*, 2 Bradf., 449 ; *In re Duane*, 8 Jur. [N. S.], 752 ; *In re Woodly*, 3 Sw. & Tr., 429 ; *In re Cooms*, L. R., P. & D., 302 ; *In re Baker*, Prerog. Ct., 1844 ; 3 Notes of Cases, 162 ; 2 Pars. on Cont., 515 ; 4 East, 130 ; 3 Sandf., 318 ; 17 N. Y., 194 ; 14 M. & W., 794 ; 1 Redf. on Wills, 208, 209 ; *Winson* v. *Pratt*, 5 J. B. M., 484 ; *Roper* v. *Franklin*, 6 Grat., 1 ; *Rucker* v. *Lambdon*, 12 Sw. & M., 230 ; *Secherest* v. *Edwards*, 4 Metc. [Ky.], 163.) The subscription of the testator, and the acknowledgment thereof to the attesting witnesses was in conformity with the statute. (*Harrison* v. *Harrison*, 36 N. Y., 486 ; *Baskin* v. *Baskin*, id., 416 ; *Butler* v. *Benson*, 1 Barb., 526 ; 1 Jarm. [ed. 1861], 74 ; *Ellis* v. *Smith*, 1 Ves., Jr., 11 ; 1 Redf. on Wills, 209–211 ; *Armstrong* v. *Armstrong*, 29 Ala., 538 ; *Rosser* v. *Franklin*, 6 Grat., 1 ; *Dudley* v. *Dudley*, 3 Leigh., 436 ; *Bone* v. *Spear*, 1 Philim., 345 ; *Tone* v. *Castle*, 1 Curt., 303 ; *Dewey* v. *Dewey*, 1 Metc., 349 ; *Nicherson* v. *Brick*, 19 Cush., 332 ; *Tilden* v. *Tilden*, 13 Gray, 110 ; *Todd* v. *Thompson*, 9 L. T. [N. S], 177 ; *Hall* v. *Hall*, 17 Pick., 373.) The declaration of the testator, at the time of acknowledging the signatures, that the paper was his last will and testament was sufficiently within the statute. (*Hunn* v. *Case*, 5 N. Y. Surr., 307 ; *Van Hoosier* v. *Van Hoosier*, id., 365 ; *Hunt* v. *Moobrie*, 3 Bradf., 322 ; *Tunnison* v. *Tunnison*, 4 id., 138 ; *White* v. *Trustees*, 6 Bing., 310 ; *Risben* v. *Hicks*, 3 Bradf., 353 ; *Nipper* v. *Groesbeck*, 22 Barb., 670.) The absence of a seal was not fatal. (*In re Diez*, 50

N. Y., 88.) This is a case where mere technical objections should be rejected. (Redf. on Wills, 212, 213 ; *In re Walker*, 1 Sw. & Tr., 653 ; *In re Cassmore*, 1 L. R., 653.)

FOLGER, J. It is clearly proven, that the witnesses to the instrument saw no act of signing it, by the deceased, until after they had signed their own names to it.

It is the law of this State that a subscription of a will by a testator, after the witnesses have signed their names to it, is not a due execution of it by him. (*Jackson* v. *Jackson*, 39 N. Y., 153.)

But it is not a requisite that he should subscribe the will in their presence. If he has subscribed his name in the proper place before they are called in, and then acknowledges to them such subscription to have been made by him, it is, so far, an execution in due form. (2 R. S., 63, § 40, sub. 2.)

Now the name "*J. Kelly*" did appear in this instrument before the witnesses put their names to it. It did not expressly appear that that name was written by the testator, though perhaps it may be legally inferred that it was, from his declaration that he "drawed up" the paper. There is no oral proof other than this that it was his handwriting. If a deceased person's name appear to an instrument purporting to be his will, and he acknowledge to the witnesses that name to have been subscribed by him, or subscribed for him at his request or with his consent, and adopted by him as his own act, it is a good subscription of the paper as a will. In the absence of a subscription in the presence of the witnesses, there must be substantially such an acknowledgment ; and the law will not deem sufficient proof of subscription that which does not come up to this. (*Chaffee* v. *Bap., Miss. Conv.*, 10 Paige, 85 ; *Lewis* v. *Lewis*, 11 N. Y., 220.) *Baskin* v. *Baskin* (36 N. Y., 416), does not conflict with this view. In that case there was proof, by one witness, of the actual signature by the testator ; and it is there said that the testator must verify the subscription of his name as authentic, and stress is laid upon his production of the paper to which he had personally affixed

his signature. Now here the deceased made no reference to the name "*J. Kelly*," as his act of subscription. He did not tender the paper to the witnesses as a will completed by him. He went through the form of subscribing his name in another place in their presence, and, so far as the testimony shows, meant that subscription as his act of authentication. This does not come up to the requirement in *Baskin* v. *Baskin*. He did not present to the witnesses that name, "*J. Kelly*," in the middle of a sentence, for their attestation. He might have done so, and did the testimony give reason to hold that he did, the case would be somewhat like *In re Walker* (2 Swaby & Tristam, 354), cited by the learned justice at General Term. But instead of doing so, he wrote his name, in another mode of signature, in another place. In *Willis* v. *Mott* (36 N. Y., 486), the proof of subscription was made out, in part, from the attestation clause, which was explicit that an acknowledgment of the subscription relied upon was made to the witnesses. The signature of the testator relied upon was proven to be in his handwriting. The testator acknowledged to one of the witnesses that he had signed the will. Another saw that signature, and knew that it was signed by the testator. A third witness was dead, but had signed the attestation clause, which expressed a direct acknowledgment of subscription. It is a different case from this. Here there was no reference to the name "*J. Kelly*" by the deceased or the witnesses orally, or by an attestation clause. The subsequent signing of his name, though out of the usual place, with the purpose of completing the instrument by him, precludes the idea that he had made the name "*J. Kelly*" for his signature to the paper as a will, or that he adopted it as such. In each of the cases in 36 New York (*supra*), there is an adoption of the name relied upon for a due subscription of the will, and that name is shown to be the genuine signature of the testator. That adoption was by some unequivocal declaration. There is lacking in the case in hand, an unequivocal act or declaration adopting, as his subscription to the instrument, the name now relied upon to obtain probate.

Besides this, it may not be said that the end of the will is at the place where the name "*J. Kelly*" appears. There follows it quite important parts of a will—the nomination of an executor, and the revocation of former wills. It is said that the whole testamentary disposition preceded that name, and that on rejecting the part naming an executor, there can be appointed an administrator with the will annexed. We cannot be sure that such was the purpose of the testator. There are cases, in which quite a material part of the intention and forecast of the testator, centers in the selection of persons to execute his testamentary purpose; where important trusts are created in behalf of natural persons, important charitable institutions are founded, or other large and far-reaching designs are shaped, and the administration and execution of them committed to the executors of the will, who are not named until the concluding clause of it. Indeed, it is not an unknown thing that the sole object of the making of a last will has been to appoint an executor, giving no testamentary disposition of the estate, but leaving the executor to dispose of it according to the statute of distribution; and such a will must be proved. (3 Redf. on Wills, 67.) So the clause of revocation of all former wills is sometimes of much import, and it is usually the final provision in a will. A will may become operative as a revocation of a former will, though inoperative in other respects. (*Laughton* v. *Atkins,* 1 Pick., 535.) Can we say that the end of the will has been found, until the last word of all the provisions of it has been reached? To say that where the name is, there is the end of the will, is not to observe the statute. That requires that where the end of the will is, there shall be the name. It is to make a new law to say that where we find the name, there is the end of the will. The instrument offered is to be scanned, to learn where is the end of it as a completed whole; and at the end thus found, must the name of the testator be subscribed.

It is true that there are, and may be, cases in which all that a testator commits to writing in the same connection with his expression of testamentary purpose, will not be taken as part

of his last will and testament. (*Tonnele* v. *Hall*, 4 Comst., 145; *Thompson* v. *Quimby*, 2 Bradf., 449.) But there must be evidence thereof in the form of the paper; in the wording and date of it; in the circumstances attending the execution, and preparation of the place for the signature of testator and witnesses; and in the fact that the portion of the written matter taken as a will to the exclusion of the other, is a sufficient will in form and substance. Such a case was *Conboy* v. *Jennings* (1 Sup. Ct. Rep., 622), which we refer to only as an illustration of a probable state of facts.

There are some cases cited by the respondent from courts to which an appeal lies to this court. They are of recent decision. The judgments in them may have been appealed from. We will not risk the appearance of a prejudgment by comment upon them.

I have examined all the cases cited by the respondent's counsel. They are, many of them, from other jurisdictions, and pass upon statutes quite different from ours, or which have had a laxer interpretation than has been given to ours by our predecessors.

The cases of *In re Woodley* (3 S. & T., 429 [1864]), *In re Walker*, *supra* (1862), and *In re Cassmore* (1 L. R. Pro. & Div. [1869]), cited by the learned justice at General Term, were decided after the act of parliament (15 and 16 Victoria, ch. 24, 1852–1853), which very much relaxed the rigor of the former act, which is said (in *Jackson* v. *Jackson*, *supra*,) to have been very like ours. (For a statement of the provisions of the act of 1852 and 1853, see *In re Heady's Will*, 15 Abb., Pr. Rep. [N. S.], 218.)

It is evident that the deceased considered the instrument to be one paper. We have no reason to say that he wished one part of it to be carried into effect if the whole was not. The statutory provision requiring the subscription of the name to be at the end, is a wholesome one, and was adopted to remedy real or threatened evils. It should not be frittered away by exceptions. While its provisions should not be carried beyond the policy of the framers of it, that policy should not be defeated by judicial construction. (*Hayes* v. *Hardin*, 6 Penn. St., 409.)

We are brought to the conclusion that the paper propounded for probate, as a will, was not executed in compliance with the requirements of the statute of this State.

The judgment of the General Term should be reversed and the decree of the surrogate affirmed.

All concur.

Judgment accordingly.