IN THE MATTER OF THE PROBATE OF THE WILL OF JAMES O'NEIL, DECEASED.

*Will — when probate thereof will be refused, because it is not subscribed at the "end" —*
*2 R. S., 63, sec. 40.*

A will was written upon a printed form or blank consisting of four pages, folded in the center like ordinary legal cap. At the top of the first page was printed the usual first clause of a will. The rest of the first page, the whole of the second and nearly all of the third were left blank. At the foot of the third page was printed a clause appointing executors, a subscription clause, "In witness whereof," etc., and an attestation clause; the fourth page was blank.

The blanks in the printed portions were filled in, as were also all the vacant portions of the first, second and third pages.

On the third page was written the thirteenth clause, as follows: "Thirteenth, And I authorize and empower my executors hereinafter named to sell, convey, assign and transfer my real property for the payment of the bequests hereinbefore named and mentioned, either at private (here the end of the blank space was reached. On the top of the fourth page was written, as follows:) or public sale, and in the manner that they will deem the most profitable and advantageous to my said estate;" it then directed that the executors should not be compelled to sell the real estate until the lapse of five years from the testator's death. The will as so drawn, including what was written on the fourth page, was read to the testator, and then signed by him on the third page, at the end of the subscription clause, and by the witnesses at the end of the attestation clause.

*Held,* That the will was not signed by the testator or the witnesses at the " end " thereof.

That the portion of the will written upon the fourth page could not be rejected, and the residue thereof be admitted to probate.

That probate of the will should be refused. (LEARNED, P. J , dissenting.)

APPEAL from a decree of the surrogate of the county of Essex, admitting to probate the last will and testament of James O'Neil, deceased.

The will was written upon a printed form or blank consisting of four pages, folded in the middle like ordinary legal cap. The form consisted of a printed heading on the top of the first page, the rest of the first page, the whole of the second and the greater part of the third page being left blank. Towards the bottom of the third page was printed a clause providing for the appointment of executors, a subscription clause, "In witness whereof, I have hereunto subscribed my name," etc., and an attestation clause at the bottom. The thirteenth clause was commenced on the third page, and was written as follows :

" 13*th. And I authorize and empower my executors, hereinafter named, to sell, convey, assign and transfer my real property for the payment of the bequests hereinbefore named and mentioned, either at private* ——

" Likewise I make, constitute and appoint *Dennis Daly, of the town of Moriah, Essex county, State of New York, George T. Treadway, also Edward Donohoe, all of Moriah,* to be executors of this my last will and testament, hereby revoking all former wills by me made.

" In witness whereof, I have hereunto subscribed my name and affixed my seal the *twenty-eighth* day of *February*, in the year of our Lord one thousand eight hundred and *eighty*.

" *JAMES O'NEIL.*  [*L. s.*]

" The above instrument, consisting of one sheet, was at the date thereof subscribed by *James O'Neil* in the presence of us and each of us, he at the time of making such subscription acknowledged that he made the same and declared the said instrument so subscribed by him to be his last will and testament; whereupon we then and there, at his request and in his presence and the presence of each other, subscribed our names as witnesses thereto.

" *DENNIS DALEY, residing at Mineville, N. Y.*

" *GEORGE T. TREADWAY, residing at Mineville, N. Y.*

" *EDWARD DONOHOE, Mineville, N. Y.*

" *or public sale, and in the manner which they will deem the most profitable and advantageous to my said estate, but in no case shall my said executors be process, by law or otherwise, to sell and convey and dispose of my said real property before the lapse of five years after my death, unless my said executors shall see fit and proper to sell and dispose of the same, by virtue of the power and authority hereinbefore given them as aforesaid."*

The last clause was written on the top of the fourth page. This will, as so drawn, was read to the testator in the presence of the witnesses, the portion written on the top of the fourth page being read as if it had all been written in the blank space immediately after the word " private."   He then signed the will just after the subscription clause on the third page, declared it to be his last will and testament, and requested the witnesses to sign, who thereupon did subscribe their names to the attestation clause at the bottom of the third page.

*M. D. Grover* and *Samuel Hand*, for the appellants Ann Lynch and others.

*Matthew Hale*, for the executors, respondents.

BOARDMAN, J.:

The portion of the will offered for probate on the fourth page of the sheet of paper was after the signature of O'Niel and after the attestation clause and signature of the witnesses, all of which were on the third page. In the body of the instrument preceding the signatures no reference is made to the part on the fourth page, that part was read to the testator, and the evidence shows he considered it a part of his will. It seems to be the concluding portion of the thirteenth clause of the will written upon the fourth page, because there was not room enough on the third page before the printed clause appointing executors and the attestation clause. The question presented is, whether a will so executed is valid under our statutes.

By our statute of wills (2 R. S., 63, § 40), a proper execution of a will requires that it shall be subscribed by the testator at the end of the will, and that each attesting witness shall sign his name as a witness at the end of the will. It is not so signed in this case by either the testator or the witnesses. The part following such signatures was intended by the testator to be a part of his will. It is not referred to in the body of the will. The instrument seems more objectionable and far more dangerous than the one rejected in *Sisters of Charity* v. *Kelly* (67 N. Y., 409), which is quite conclusive of the case now under consideration. Judge FOLGER, says: "To say that where the name is, there is the end of the will, is not to observe the statute. * * * It is to make a new law to say that where we find the name there is the end of the will." The part which followed the signature of Kelly was of less importance in that case than the part which here follows the signatures. It would be very dangerous to recognize the doctrine contended for by the respondents. In the present case, the part after the signature may not be of great importance. But in the next case it may be of vast importance. If this fourth page may be incorporated in the will in like manner, the third page also could be so incorporated had the signatures been at the bottom of the second page. It would be very dangerous to allow such construction. Wills are quite frequently made with great secrecy. Very often their contents are unknown to any one except the testator and the person who prepared them for execution. The witnesses are called

in to attest the formal requisites, they see nothing but the signature and the attestation clause which they sign, they know nothing of the contents or the structure of the instruments; after execution it is not uncommonly left with the attorney or person who wrote it for safe keeping. How easy, after testator's death for such person to add to any clause after the signature in the same handwriting, the most important and vital provisions wholly at variance with the testator's will and wish. Who could detect such addition? How could the estate be protected against such dishonesty, except by a strict adherence to the rule that the testator must sign the will at the end so as to make such an act impossible? Such was doubtless the purpose of the statute. As applicable to this case, I may quote further from the learned judge's opinion (p. 416): "It is evident that the deceased considered the instrument to be one paper. We have no reason to say that he wished one part of it to be carried into effect if the whole was not. The statutory provision requiring the subscription of the name to be at the end, is a wholesome one, and was adopted to remedy real or threatened evils. It should not be frittered away by exceptions." The act of 1 Victoria, as is said in *Jackson* v. *Jackson* (39 N. Y., 160), "differs but little in its provisions touching the executions of wills from our own." Under that act the English courts have repeatedly refused probate to instruments like the present. (*Willis* v. *Lowe*, 5 Notes Cases, 428; *Smee* v. *Bryer*, 6 id., 20; 406; *Ayres* v. *Ayres*, 5 id., 375; *Goods of Henry*, 2 Robt. Eccl., 140; *In re Milward*, 1 Curteis, 912.) Other decisions of the English courts of a later date, tending to sustain the respondent's position, were made under the statute (15 and 16 Victoria), which "very much relaxed the rigor of the former act," as Judge FOLGER says. Such cases are not, therefore, of controlling weight with us by reason of the greater latitude given in the execution of wills.

Where a will is complete in itself, instructions or directions inserted after the signature may perhaps be rejected as forming no part of it. Such was the case of *Conboy* v. *Jennings* (1 Thom. & C., 622). So, too, a will by reference to a deed, a record or a map may so far make it a part of the will as to authorize its use for the purpose of making that certain, which otherwise might be doubtful. But such cases do not aid us where the extraneous matter

is plainly intended to be a part of the instrument to be executed, (*Sweetland* v. *Sweetland*, 4 Sw. & Tr., 6; *Hays* v. *Harden*, 6 Penn., 409; approved, 15 id., 291 [Wikoff's appeal]; *Glancey* v. *Glancey*, 17 Ohio St., 134; *Tonnele* v. *Hall*, 4 N. Y., 140; *McGuire* v. *Kerr*, 2 Bradf., 244.)

But without further reference to authorities, we think we are following the decision in *Sisters of Charity* v. *Kelly* (*supra*), when we reverse the decree of the surrogate.

The decree of the surrogate is, therefore, reversed with costs to both parties out of estate, and probate is denied.

LANDON, J:

I concur. This will, as a whole, embraces writing following the signature, and therefore, in my opinion, cannot be said to be subscribed at the end. Argument based upon the suggestion of interlineation, or order of paying seems to be inapplicable to this will. To probate it, opens the door to an indefinite extension or modification of the matter directly preceding the signature.

LEARNED, P. J. (dissenting):

If the doctrine of *Sisters of Charity* v. *Kelly* (67 N. Y., 409) applies to this case there is no need of any discussion. In that case there were two signatures. The second was rejected for reasons which have no connection with the present case. The first was rejected because it was in the middle, and not at the end, of the last sentence of the will — the sentence which named executors and revoked former wills. There was no question that, in orderly and regular reading, the will terminated with the clause revoking former wills. And the signature was not at the end of that clause, but was a few lines above. So that in reading the will that signature would be read before the will was finished. Now, it is urged in the present case by the proponents that in the orderly and regular reading of this will the testator's signature would be after the last word of the will, and that the words on the fourth page come in regularly on the third page. There can be no doubt that such is, in fact, their real place. No one can fail to see that as the will was read and understood, and is now to be read and understood, these words formed, and now form, a part of the sentence which preceded,

and now precedes, the final sentence by which executors were appointed.

The question then presented is this: Do the words "at the end of the will" in the statute refer merely to the place upon the paper, or do they refer to that which forms the conclusion of the testator's written will, when such will is read in its plain logical order.

And, perhaps, this question may be illustrated by cases that may be supposed. It is a common practice in these days to begin a letter on the first page of a sheet of writing paper, to continue it on the third, then on the second, and finally, if needed, on the fourth. If a letter were written after this style, beginning on the first and then continuing on the third page and were finished on the second, is there any doubt that the signature of the writer would properly be said to be at the end of the letter, although, *physically*, on a page which would be before a part of the letter? Would anyone say that the end of the letter was on the third page?

And if a testator should in like manner begin his will on the first page of a sheet of paper, continue it on the third and finish it on the second, could it be urged that his signature on the second page was not at the end of the will, because the third page came after it?

Or suppose that, after having thus written his will, he should sign it at the foot of the third page, would that be a signature at the end of the will?

Or again: suppose that, after a testator had written his will on several loose sheets they were accidentally fastened together in an incorrect order, would it be said that his signature was not at the end of the will, because the sheet on which was his signature had been misplaced?

In the present case, if the scrivener, for want of space on the third page, instead of writing the continuation of the sentence on the fourth page, had found a blank space at the top of the first page and had written the continuation there, would not the will have been valid?

Or if he had written such continuation on the margin of the third page, would not the will have been valid? And that, too, even if some of the marginal words had extended farther down on the paper than the place of the testator's signature.

Or if he had found that margin insufficient, and had written them

partly on that margin and partly on the margin of the fourth page, would that fact have shown that the testator's signature was not at the end of the will?

Sometimes a scrivener may use paper of which the pages are joined at the top; sometimes he may use that which is joined at the side. If a will covers two pages of one kind of paper, the end will come at one place; if it covers two pages of the other kind, the end will come at the other.

I have taken these illustrations to show that the end of the will does not depend on the physical position of the words; but that it is to be found at that point, where, on the reading of the whole instrument, is found the last word of the testator. Other illustrations might be taken from the various modes of beginning and ending their writings adopted by different nations.

A Hebrew book ends on what corresponds with the first page of an English book. If a will were written in Hebrew in that manner, I suppose the end might be on what is usually called the first page.

The question before us is not whether a forgery might not be committed in some cases. A forgery might be committed by an interlineation; yet an interlineation may, I suppose, be made before the will is executed, and the will may be valid. The validity of an inserted clause does not depend on the mere fact that it is written *between* the lines.

May it not be written on the margin? And, if on the margin, is there any special place on the margin where it must be written? Its validity depends on the fact that it forms a part of the written wishes of the testator, and that its true place in the will is manifest and was understood by him.

The sole question here is whether the testator's signature is "at the end of the will." And that depends, as I said above, on the question what is the end? It seems to me that the end is to be found by reading the will through in the order which the writing indicates, disregarding, if necessity requires, mere physical position. And when the will has been thus read through, the end will be reached; and there the signature should be found. This is what is continually done in reading manuscript, where a writer, by proper marks, indicates that sentences are to be inverted here and there.

That I suppose to be the meaning of the court in *Sisters* v. *Kelly* (*ut supra*), when they say that the will is to. be "*scanned ;*" that is, probably, examined with care. I suppose this means something more than that the writing is to be measured with a carpenter's rule to see whether any part is lower on the page than the signature.

In the case of *In re Goods of Henry* (2 Rob. Ecc., 140), the will ended on the second page, leaving thereon a space of one inch and three-tenths of an inch. On the top of the third page began "Signed by me," etc., with the signature of the testator. It was held that on account of this space of one inch and three-tenths, the will was not signed "at the foot or end." Of the same character are the cases of *Willis* v. *Lowe* (5 Notes' Cases, 428); *Ayres* v. *Ayres* (Id., 375); *Smee* v. *Bryer* (6 id., 406). Whether these cases are law here, I need not inquire. They are not law in England now; and at any rate they do not touch the present question.

In the case of *Goods of Kimpton* (3 Swabey & Trist., 427) the will occupied three pages of foolscap. A codicil of the same date occupied the upper half of the last page. A second codicil began on the fourth or lowest quarter of the last page, and ended with the words "In witness whereof, I, the said." Then the sentence was continued on the third quarter of the last page as follows : " Sarah Kimpton, the testatrix, have hereunto set my hand," etc., with a brief testamentary disposition of some books, followed by the signature and attestation, so that the chief part of this second codicil was literally underneath the signature. It was held that where any portion of the writing appeared to form part of the context anterior to the signature, it may be considered as following that context, and probate of the second codicil was granted. Thus, in that case, although the signature in its mere position stood over the important part of the codicil; yet on reading the codicil in the orderly and logical way the signature was at the end of the last word. That case is very closely analogous to the present.

Where, in this case, is the end of the sentence which begins the thirteenth clause? Plainly at the last of the words written on the fourth page. The next sentence is that which appoints executors. And the last sentence of the will is the *in testimonium* clause. The last word of that sentence is the end, and there stands the signature. See *Tonnele* v. *Hall* (4 N. Y., 140), which shows that a

signature may be correctly said to be at the end of the will, although there be after it a map, referred to in the will and held by the court to constitute a part thereof.

I think the decree should be affirmed, with costs.

Decree reversed and probate refused, with costs to both parties· in the court below, and on appeal, to be paid out of the estate.