ALLEGANY COUNTY.—HON. C. A. FARNUM, SUR-
ROGATE.—October, 1885.

## MATTER OF CASE.

*In the matter of the application for probate of a paper
propounded as the will of* MARY C. CASE, *deceased.*

In applying the statute (2 R. S., 63, § 40), which prescribes the formalities
essential to the execution of a will, the fourth subdivision of the sec-
tion, providing that the attesting witnesses must sign their names *at
the end* of the instrument, should be as rigidly enforced as the first,
which contains a like requirement respecting subscription by the tes-
tator.

The paper propounded as decedent's will was written on a half sheet of
legal cap, the first page whereof contained the disposing portion, fol-
lowed by the name of decedent and the beginning of an attestation
clause, at the conclusion of which, on the next page, appeared the
names of three subscribing witnesses ; next came an agreement signed
by the legatee to support decedent and her husband during their
natural lives ; then a clause nominating an executor, and finally a sec-
ond subscription by decedent. It was contended that the matter pre-
ceding the witnesses' names might be deemed a complete and properly
executed will ; but, the evidence showing that the entire document,
with the exception of the several signatures, was written at one
time,—

*Held,* that the obvious intent of the decedent was that all the provisions of
the paper should constitute her will, and that probate must be refused,
on account of the witnesses' failure to sign their names at the end
thereof.

Matter of Hewitt, 91 *N. Y.*, 261—followed ; Younger v. Duffie, 94 *N. Y.*,
535—distinguished.

As to whether the result would have been different, had the portion of the
instrument following the signatures of the witnesses been added after
the earlier part was executed and attested—*quære.*

PETITION by Philander B. Case, a son of decedent,
for the probate of the will of the latter. The facts
appear sufficiently in the opinion.

HENRY L. JONES, *for petitioner.*

THE SURROGATE.—Philander B. Case, one of the heirs at law of the deceased, has presented to this court, for probate, an instrument, claiming it to be the will of his mother, Mary C. Case. An inspection of the paper shows that the attesting witnesses did not sign their names at the *end* of the will, as required by 2 R. S., 63, § 40, subd. 4.

Had nothing more appeared or been claimed, the Surrogate, very properly, might have refused to hear proofs (Matter of Hewitt, 91 *N. Y.*, 261; below, 5 *Redf.*, 271); but it was urged that the instrument was properly executed and attested and made a complete will, then the clauses following the signatures of the witnesses were added, and subscribed by the deceased, after the paper was so witnessed.

The whole instrument is written upon half a sheet of legal cap paper. The name of the testatrix appears at the end of the disposing part of the instrument, written near the bottom of the first page. Immediately following her signature is the attestation clause, which covers the remainder of the first page and three lines of the second page. Immediately following the attestation clause, the three witnesses subscribed their names. Then follows: "The aforesaid Philander B. Case" (the devisee and legatee named) "hereby agrees to care for and support his father and mother, as heretofore done by his mother, during their natural life. In attestation of which he hereby signs his name, Philander B. Case."

"And lastly, I do hereby nominate and appoint my friend J. P. Dye to be the executor of this my last

will and testament, hereby revoking all former wills made by me.   Mary C. Case (her x mark)."

Had this portion of the instrument, following the signature of the attesting witnesses, been written in point of time *after* the witnesses had subscribed their names, possibly the first page of this paper could have been admitted to probate, if Brady v. McCrosson (5 *Redf.*, 431) be sound law.   It is unnecessary to pass upon this point, for it appears that, in this case, the *whole* of the writing, except the signature of the testatrix, the subscribing witnesses, and Philander B. Case, was made before there was a signing by any person; the matter was canvassed by the witnesses, in the presence of the deceased, whether the witnesses ought not to write their names on the paper after or below the subscription of the testatrix, and the draughtsman remarked that to sign as they were requested would be a good execution.

It is clear to my mind that the deceased intended *all* of the provisions contained in the paper should make up her will, and that to accept the portion preceding her signature and reject that following it, will not accomplish her wishes.   This statute has specifically provided that each of the attesting witnesses shall sign at the *end* of the will.   The first subdivision of the section containing this provision requires the testator to subscribe his name at the end of the will.   Under the first subdivision of the section, the rule has been rigidly and literally enforced by the courts (see Sisters of Charity v. Kelly, 67 *N. Y.*, 409; Matter of O'Neill, 27 *Hun*, 130; affi'd 91 *N. Y.*, 516; Matter of Hewitt, 91 *N. Y.*, 261), and

no good reason is given why the same rule should not be insisted upon, under the fourth subdivision of the section.

Younger v. Duffie (94 *N. Y.*, 534) is not an authority for holding that this instrument was properly executed. In that case, the testator subscribed his name after the attestation clause, and the subscribing witnesses and the notary then signed below his name. The court held that strictly the attestation clause is no part of a will, it not being essential to its validity; but that the testator subscribing his name after it incorporated it in, and made it part of his will. In that case, the statute was strictly followed—the testator subscribed at the *end* of the will, and the witnesses signed their names at the end of the will. The reasoning of Judge EARL, in the Matter of Hewitt *(supra)* fully covers this case, which is but another illustration of the evil results following the attempt made by laymen to give counsel in legal matters of a highly technical character.

Probate must be denied, and a decree will be made accordingly.