<hr/>

NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—December, 1887.

MATTER OF McMULKIN.

*In the matter of the application for probate of a paper propounded as the will of* MARY McMULKIN, *deceased.*

Upon an application for the probate of the alleged will of decedent, it appeared, from the depositions of B. and C., the subscribing witnesses, that they severally wrote their names as such, on the paper propounded, and that decedent, in their presence, declared the same to be her will. The deposition of one, S., further disclosed the facts that decedent had acquainted him with her purpose " to settle" some money she had in America, and, on being informed that two witnesses would be necessary, had asked deponent to find "two responsible working men," to act in that capacity; that deponent had waited upon B. and C., obtained their consent to witness the execution, and promised to notify them when to attend, afterward reporting the result to decedent, who said "all right." There was no attestation clause.—

*Held*, in the absence of evidence that B. and C. had been actually summoned,—that their subscription was personally observed or requested by decedent,—or that the latter took charge of, or ever saw, the paper after execution,—probate must be refused for want of proof of the *request* required by 2 R. S., 63, § 40, subd. 4.

The paper propounded as decedent's will purported to have been executed by cross-mark, was unaccompanied with an attestation clause, and

presented, at its end, the names and residences of the subscribing witnesses and the name and mark of decedent, in a confused jumble, which afforded no clue as to the order of time in which the several signatures had been affixed. In the absence of explanatory evidence,—

*Held*, that probate must be refused for want of proof that the subscription by decedent preceded, in time, the acts of the attesting witnesses.

PETITION for probate of a will. The facts are stated in the opinion.

L. H. ARNOLD, *for proponent.*

E. CONWAY, *special guardian, for contestants.*

THE SURROGATE.—When the proofs theretofore taken herein were submitted, in June last, for the consideration of the Surrogate, they were deemed by him insufficient to show that the subscribing witnesses to this alleged will acted as such witnesses at decedent's request; but, for reasons stated in the Surrogate's memorandum of June 29th, the proponents were allowed to submit additional evidence in that regard. A commission was subsequently issued for taking the deposition of Thomas Slavin, the husband of one of the persons named as beneficiary in the disputed paper.

Slavin was examined before the commissioner. His testimony is substantially as follows: Two or three days prior to November 14th, 1885 (the day when such paper was executed), and prior, indeed, to the preparation of such paper, the decedent said to him that she " had some money in America and wished to settle it." Slavin thereupon asked her if she wished any one sent for, to draw up her will. She replied that Father Campbell, a priest of her acquaintance,

had said that he would prepare it. Slavin then inquired if she had in mind any persons to act as witnesses, telling her that two such persons would be needed. She answered in the negative, and asked him to find " two responsible working men," to perform that service. Slavin then suggested the names of Thomas Conlay and Patrick Boyle (the same persons whose names appear on the alleged will as its subscribing witnesses) and offered to see both of them, and to " see if they had any objections." The decedent said : " Do so." Afterward, Slavin waited upon Thomas Conlay, and " asked him if he had any objection to becoming a witness for a will that Mary McMulkin had expressed a wish to make." Conlay replied : " Not in the least." Slavin subsequently called upon Patrick Boyle, addressed to him the same inquiry that he had put to Conlay, and with like result. Slavin said, to both Conlay and Boyle, that he would let them know when they would be wanted, but it does not appear by the testimony that this promise was ever fulfilled. In answer to the question whether he, Slavin, had made any appointment with Conlay and Boyle, he testified : " I did not make any appointment as to the hour ; I have related all that was said by them and by me at the time. I told Mary McMulkin, at a convenient opportunity, that I had spoken to the persons proposed for witnesses, and that they had consented. She said ' All right.' "

It appears, from the depositions of Conlay and Boyle taken under the first commission, that they severally wrote their names as witnesses to the paper propounded, and that the decedent, in their presence and hear-

ing, declared the paper to be her will. It does not appear, however, that she in terms requested either of them to act as subscribing witnesses. It does not appear that there was any conversation between either of them and herself, in which Slavin's name was mentioned, and in which his agency in securing their attendance was the subject of comment. It does not appear at what precise stage in the ceremonies of execution the subscribing witnesses signed, nor whether or not the decedent actually saw them or either of them put their names to the paper, or handed them the paper, or pen, or ink, or did any other act involving an intimation of a wish that they should use pen or ink in writing upon the paper; nor is it shown whether or not the decedent took charge of such paper after its execution, or ever saw it after it had been executed.

I have grave doubts whether, in view of these facts, and in the absence of any clause of attestation, I am warranted in finding, that, within the meaning of our statute of wills, the decedent *requested* Conlay and Boyle or either of them to act as subscribing witnesses. I am referred to no reported cases in this State which seem to me to give to that statute an interpretation sufficiently broad to support this proponent's contention in the matter now under discussion and, have, therefore, though with some hesitation, reached the conclusion that the execution of this instrument is fatally defective and that it must be denied probate.

Upon careful consideration of the evidence as a whole, I am persuaded also that there is another sub-

stantial ground for denying the proponent's petition. It has been unequivocally declared by our Court of Appeals, that a testamentary paper cannot be accorded probate, unless the signature of the would-be testator has preceded, in point of time, the signature of the attesting witnesses (Jackson v. Jackson, 39 *N. Y.*, 153; Sisters of Charity v. Kelly, 67 *N. Y.*, 409; Dack v. Dack, 84 *N. Y.*, 663). Now it is well settled that, in all cases, the burden of proof is upon the proponent of an alleged will to show its due execution. It is doubtless true that, whenever, in the course of a probate trial, there has been no avowed contention in respect to the order of signatures, and no inquiry of witnesses touching that subject, the trial court may properly be content with slight proof that the alleged testator signed before, and not after, the subscribing witnesses. For example, in cases where there is a full attestation clause its recitals will be treated as affording presumptive evidence in that respect. So too the circumstance, if such circumstance exist, that upon the face of the disputed paper the signature of the alleged testator precedes the signature of the subscribing witnesses, raises a presumption that the first signature in point of space was the first in point of time. But in the case at bar, I find no facts or circumstance that afford a basis for a presumption in behalf of the proponent, and, as has been already stated, the testimony of the subscribing witnesses fails to disclose or intimate whether they wrote their names before the decedent's subscription or afterwards. The instrument has no attestation clause, and bears on its face no satisfactory evidence upon the question of the order of signa-

tures; it is written upon ruled paper, and the appearance of its last six lines is as follows:

In witness whereof I have ~~signed~~ subscribed this will this 14th day of November eighteen hundred and eighty-five years, before these witnesses,      Thomas Conlay Stoktaker 54 Northwoodside road- Witness      her
Patrick Boyle spirit salesman      Mary + McMulkin
13 Raglan Street Witness      mark

It is very possible that Mary McMulkin made her mark on this paper before Thomas Conlay wrote his name as witness, but there is no *proof* that such is the case, and so far as the paper affords any internal evidence at all in the matter, it makes for the contestants rather than for the proponent.

Probate refused.