Callahan, J.
The question for decision on this appeal is whether the instrument offered for probate was validly executed as a will in accordance with the statutory formalities (Decedent Estate Law, § 21).
*25 On April 16,1945, the propounded paper was originally drawn and signed by the decedent as a memorandum for the guidance of a lawyer in the preparation of a will. The memorandum as drawn contained as its final clause typewritten words naming two persons as executors. It was signed by the decedent above this provision. The formal will or testament, however, was never prepared as contemplated. On June 26,1945, the decedent acknowledged his signature to the writing originally intended as a testamentary memorandum and published the same as his will before two witnesses, who at his request and in his presence also affixed their signatures above the nomination of executors.
We think that the Surrogate was right in denying probate to the paper propounded as the decedent’s will in this case. “ It is the requirement of the statute that both the testator and the witnesses must sign at the end of the will.” (Matter of Hewitt, 91 N. Y. 261, 263-264.) The selection of persons to execute his testamentary purpose is important and material from the standpoint of a testator’s intention and constitutes an integral part of Ms will (Sisters of Charity v. Kelly, 67 N. Y. 409, 415; Matter of Gibson, 128 App. Div. 769, 773; Matter of Serveira, 205 App. Div. 686, 690). Where, as here, the appointive clause designating the persons to act in such capacity follows the signatures of the testator and witnesses, the will is not subscribed or signed at the end as required by the statute (Decedent Estate Law, § 21, subds. 1, 4).
In this State the rule has long been established and repeatedly followed by our Surrogates that a will is invalid and lacks sufficient compliance with the statutory provision for subscription at the end where the testator’s signature is followed by a clause appointing an executor or executors (see M’Guire v. Kerr, 2 Bradf. 244 [Bradford, S., 1853]; Matter of Jacobson, 6 Dem. 298 [Rollins, S., 1887]; Matter of Nies, 13 N. Y. St. Rep. 756 [Adlington, S., 1887]; Matter of Gedney, 17 Misc. 500 [Betts, S., 1896] ; Matter of Van Tuyl, 99 Misc. 618 [Beekman, S., 1917]; Matter of Tyner, 138 Misc. 192 [Wingate, S., 1930] ; Matter of Bongiovanni, 140 Misc. 436 [O’Brien, S., 1931]; Matter of Steiner, 142 Misc. 710 [Henderson, S., 1932]; Matter of Foster, 51 N. Y. S. 2d 930 [Griffiths, S., 1944]). The same rule has been applied where the appointment of an executor or executors comes after the signatures of the witnesses to the instrument (see Matter of Case, 4 Dem. 124 [Farnum, S., 1885]). And in Matter of Serveira (supra), where the appointment of an executor was added subsequent to execution of the will, it was said (p. 690): “ Undoubtedly, had the name of an executor been written in *26 before execution, a different question would have been presented, for that would have been a substantial part of the will, and a subscription preceding it would not have been a signing at the end of the will.” (See Sisters of Charity v. Kelly, supra; Matter of Blair, 84 Hun 581, affd. 152 N. Y. 645; Master of Gibson, supra; see, also, Matter of Hewitt supra; Matter of O’Neil, 91 N. Y. 516; Matter of Whitney, 153 N. Y. 259 and Matter of Andrews, 162 N. Y. 1.)
The proponent in this proceeding says that all cases rejecting wills as not signed at the end are instances in which the instrument was signed after the offending clause or matter by either testator or witnesses, but not by both. Of course, there could be no offending words in this sense prior to the signatures of both testator and witnesses to the will. In this case, however, the appointment of executors in the propounded paper follows the signatures of both testator and witnesses in point of location. Such appointment was on the paper at the time of signing, and the crucial question is whether the writing offered for probate as the decedent’s will is subscribed and signed at the end in accordance with the statute. We think that the nomination of executors was a substantial part of the will in this case and important to the testator’s intention regarding the administration of his estate. This provision was as much a part of the "will at the time of execution as any of the dispositive clauses. The testator made no attempt to eliminate or strike the clause naming executors. The end of the will is not found until the last word of all its provisions has been reached (Sisters of Charity v. Kelly, supra, p. 415). It is plain, then, that the signatures of the testator and witnesses to the propounded instrument must appear after or below the words appointing or naming executors, in order that there be a subscription and signing at the end as required by our statute governing the proper execution of wills.
“ The words of the statute must be construed in their plain, obvious sense, according to their signification among the people to whom they were directed. * * * Also that construction must he adopted which will effectuate, as far as possible, the intent of the framers of the statute, and obviate the anticipated evils which were the occasion thereof. * * * The legislative intent was doubtless to guard against frauds and uncertainty in the testamentary disposition of property, by prescribing fixed and certain rules by which to determine the validity of all instruments purporting to be mils of deceased persons. * * * The question then arises whether the 1 end of the will ’ referred to in the statute means the actual physical termination of the *27 instrument, or that portion thereof which the testator intended to he the end of the will. * * * While the primary rule governing the interpretation of wills, when admitted to prohate, recognizes and endeavors to carry out the intention of the testator, that rule cannot he invoked in the construction of the statute regulating their execution. In the latter case courts do not consider the intention of the testator, but that of the legislature.” (Matter of O’Neil, supra, pp. 520-521.) And, further, we are also well reminded that “ To say that where the name is, there is the end of the will, is not to observe the statute. That requires that where the end of the will is, there shall be the name. It is to make a new law to say that where we find the name, there is the end of the will.” (Sisters of Charity v. Kelly, supra, p. 415.)
It has been held that the statute should be strictly and not loosely construed (Matter of Conway, 124 N. Y. 455; Matter of Booth, 127 N. Y. 109, 116; Matter of Andrews, supra; Matter of Gibson, supra). While the princple of strict construction has provoked some criticism (see, e.g., Matter of Andrews, 43 App. Div. 394, 401 [Cullen, J., 1899], and Matter of Field, 204 N. Y. 448, 455 [Vann, J., 1912]), and particularly the rule voiding the entire instrument where the appointment of executors appears below the testator’s signature at the time the will is executed (see 7 Lectures on Legal Topics 277, 281 [Foley, S., 1926], and 21 Corn. L. Q. 351, 355), the fact of such criticism or disapproval only stresses the existence of the rule throughout the years. For that matter, the suggestion that we depart from a rigid construction of the statute has not always met with favor. (See Matter of Andrews, 162 N. Y. 1, affg. 43 App. Div 394, supra.) In any event, it is significant that the Legislature has never seen fit to relax or change the rule in this State so as to invalidate only those provisions following the testator’s signature, as was apparently done in England by the passage of a defining act in respect to a similar statute of wills (see 15 & 16 Vic., ch. 24, 1852-3). “ In the absence, however, of any such statute in this State, we are compelled to regard the decisions of our own courts in analogous cases, and construe our statute [Rev. Stat. of N. Y., part II, ch. VI, tit. I, § 40, now Decedent Estate Law, § 21] so as to give effect to the intent and meaning of it, as gathered from the language used, and the causes which gave it origin.” (Matter of Heady, 15 Abb. Frac. [N. S.] 211, 216.) We think that this observation is as true today as when first made in 1873, and should cause us to hestitate before pursuing a course in this case at variance with a long line of decisions construing an important statute.
*28 For the foregoing reasons, the decree appealed from should he affirmed.