Shientag, J.
(dissenting). The question presented on this appeal is wherether the entire typewritten will of the decedent, made by him on June 26,1945, is invalid because below his signature and the signatures of the subscribing witnesses appear typewritten words naming two executors.
The probate of the will was objected to on the grounds of fraud and undue influence, but those issues were not tried below. The only objection to the probate that was tried involved the subscription and the execution of the will. The Surrogate found that the will was duly executed but held that “ the paper must be denied probate because the witnesses testified that it is in the same condition as at the time of execution and that the appointment of the executors followed the signatures. The appointment of executors is an important and material part of the testator’s intention, and an integral part of the will. Here such appointment was placed on the paper before the signing but follows the signatures in point of location. The paper has not been ‘ subscribed by the testator at the end ’ (Dec. Est. Law, section 21, subdiv. 1 * # *).”
It appears from the record that on April 27,1945, the decedent executed a formal will in which, in substance, after making several small bequests, he left to his wife a one-third interest in his estate for life. He also left his son, John Winters, Jr., the sum of $1,000 with the proviso that if he contested the will that legacy was revoked. All the rest, residue and remainder of his property he left to his son, Henry Winters, and to Ms daughter, Alma Henze, share and share alike.
It further appears that on or about April 16, 1945, he had caused to be prepared a typewritten memorandum of a will to be later drawn in wMch he named Ms wife as life beneficiary, with the remainder to Ms three children in equal parts. He signed the memorandum on April 18, 1945. When he signed this memorandum, there appeared below his signature the following typewritten words:
1 ‘ Executors: Mrs. Alma Henze
Martin Winters, 18 Linden St., Brooklyn, N. T. ”
These words were on the paper when he signed above them.
A formal will embodying the terms of the memorandum was never prepared. However, on June 26, 1945, in the presence of relatives, he acknowledged before the two subscribing wit *29 nesses that the paper which he had signed on or about April 18, 1945, was his last will; he acknowledged his signature and asked the subscribing witnesses to sign at a place which he indicated, which was just below his signature but above the words referring to executors as heretofore set forth. The decedent died on August 19, 1949.
Was his entire will executed on June 26, 1945, invalid because his signature was placed on the paper above the names of the two executors? Originally a signature in any part of a will was sufficient. 6 ‘ The construction has been, as well in the courts of England as here, that the writing of the name of the testator in the body of the will, if written by himself with intent of giving validity to the will, was a sufficient 1 signing ’ within the statute.” (Tonnele v. Hall, 4 N. Y. 140,145.) However, in order to prevent fraudulent changes and additions to wills, there was enacted in this State in 1830 (Rev. Stat. of N. Y., part II, ch. VI, tit. I, § 40) what is now in substance section 21 of the Decedent Estate Law, which specifically makes it a condition precedent to the validity of a will that it be signed at the end thereof. Substantially similar legislation was enacted in England in 1837 (7 Will. 4 & 1 Vic., ch. 26). Our courts construed this requirement most strictly and held that if any disposition provision appeared below the decedent’s signature the entire will would be refused probate on the theory that presumably he would not wish his will to stand with a material part omitted. In any event, in dealing with the construction of the statute regulating the execution of wills, “ courts do not consider the intention of the testator, but that of the legislature.” (Matter of O’Neil, 91 N. Y. 516, 521.)
This statutory requirement received such a rigid and technical construction by the courts in England that in 1852, their statute was amended by what is known as Lord St. Leonard’s Act (15 & 16 Vic., ch. 24), which provided in substance that only those provisions which follow the signature are invalid; that nothing below the signature shall in any way affect that which precedes it. But no change was made in our statute on the subject.
As time went on many distinctions developed in the cases in this State. The literary end rather than the physical end determined the validity of the place of signature (compare Matter of Andrews 162 N. Y. 1, with Matter of Field, 204 N. Y. 448). A signature above what is considered an immaterial provision does not invalidate the rest of the' will. ‘ ‘ If it be admitted that the part objected to, or to be stricken out, is actually immaterial, there is then no reason assignable why the testator, if living, *30 could object to its exclusion ” (Matter of Gibson, 128 App. Div. 769, 772). Even a material dispositive provision, if added after the due execution of the instrument, would not affect the validity of what preceded the signature.
With this background I shall take up the question immediately before us for consideration: the effect of signing above a provision naming executors under the circumstances here presented.
The appointment of an executor, although at one time considered to be an indispensable part of a will, is no longer necessary (Matter of Davis, 45 Misc. 554, 556, affd. 105 App. Div. 221, affd. 182 N. Y. 468). A will is valid even if no executor is named. An administrator with the will annexed will be named by the court to carry out the provisions of the will. So, too, a trust is not permitted to fall because of the absence of a trustee. Why, therefore, in reason, in common sense and in furtherance of a statute designed to prevent fraud, should the naming of the executors in and of itself, following the signature, invalidate the whole instrument? The appointment of an executor is not dis-positive; standing alone, it in no way affects any disposition under the will. How does it come about, therefore, that it seems to be commonly regarded as law in this State that where there is a provision in a will naming executor and the testator and witnesses sign above the provision the entire document is invalidated? The rule seems to find its origin in an old case in the Court of Appeals (Sisters of Charity v. Kelly, 67 N. Y. 409 [1876]) in what has been characterized as a dictum, although it constituted one of the grounds for the decision of the court (See Ward v. Putnam, 119 Ky. 889). The opinion in Sisters of Charity v. Kelly (supra) rested in the first place on the holding that it did not appear that the testator intended “ J. Kelly ”, where it was placed, to be treated as his signature to the will. The court went on to say (p. 415): “ It is said that the whole testamentary disposition preceded that name, and that on rejecting the part naming an executor, there can be appointed an administrator with the will annexed. We cannot be sure that such was the purpose of the testator. There are cases, in which quite a material part of the intention and forecast of the testator, centers in the selection of persons to execute his testamentary purpose; where important trusts are created in behalf of natural persons, important charitable institutions are founded, or other large and far-reaching designs are shaped, and the administration and execution of them committed to the executors of the will, who are not named until the concluding clause of it. Indeed, it is not an unknown thing that the sole object of the making of a last will has *31 been to appoint an executor, giving no testamentary disposition of the estate, but leaving the executor to dispose of it according to the statute of distribution; and such a will must be proved. * * * So the clause of revocation of all former wills is sometimes of much import, and it is usually the final provision in a will. * * * To say that where the name is, there is the end of the will, is not to observe the statute. That requires that where the end of the will is, there shall be the name.”
In this case there is not even a mention of “ executors ” in that part of the document which is above the signature of the testator. Certainly no trusts are established, no “ important charitable institutions are founded and the administration and execution of them committed to the executors of the will. ’ ’ Here all that we have is the naming of two persons as executors; nothing more; no provisions relating to their powers or duties; no exceptions of any kind from statutory requirements. It may be said, in passing, that the reference in the passage quoted to the effect of a revocation clause has been effectively limited in later cases (Ludlum v. Otis, 15 Hun 410, 413; Matter of Serveira, 205 App. Div. 686, 689 [dictum]).
Following the decision in Sisters of Charity v. Kelly (supra) the Surrogates invariably and rigidly followed the rule there laid down. Since that case was decided, the precise question here involved has never squarely been presented to an appellate court, so far as has been brought to my attention. There have been what are patently dicta (citing Sisters of Charity v. Kelly, supra) in Matter of Gibson, 128 App. Div. 769, 773; Matter of Serveira, 205 App. Div. 686, 688, supra; Matter of Blair, 84 Hun 581, affd. 152 N. Y. 645). In Matter of Blair (supra) the provision which followed the signature was as follows: “ I hereby direct my executors to sell at private sale that piece of real estate, * * * known as * # * , and occupied by Mr. Rosenthal, and the proceeds thereof to be devoted to liquidating any deficiency that may arise in interest or cash bequests made in this will.”
It was held that this was a material and integral part of the will and because the signature of the decedent was placed above it the entire will was invalidated. But that clause is fundamentally different from the mere naming of executors, and nothing more, such as we have in the instant case.
The rigid construction placed upon section 21 of the Decedent Estate Law has been the subject of much criticism, judicial as well as extrajudicial. As far back as 1899, Cullen, J., later Chief *32 Judge of the Court of Appeals, said: “ We think the decisions of the courts of this State will be examined in vain in the attempt to find six cases of alleged fraudulent additions to wills, or even half that number; and it must be conceded that as to this supposed danger the remedy has proved in practice far worse than the disease. In England a statute similar to our own, and construed as strictly by the courts of that country as our statute has been construed by our courts, was passed in 1837 (1 Vic. ch. 26.) The evils resulting from it proved so great that in 1853 (15 & 16 Vic. ch. 24) it was modified. (1 Jarm Wills [5th Am. ed.], 106.) ” (Matter of Andrews, 43 App. Div. 394, 401.)
In Matter o f Field (204 N. Y. 448) Vann, J., after quoting the foregoing from Cullen, J., went on to say (p. 455): “ The evil of fraudulent changes in wills is rare, while the evil of defeating wills altogether in the manner suggested is common. Hence, we think we have gone far enough in the direction of rigid construction and that the doctrine of certain authorities should not be extended, lest in the effort to prevent wrong we do more harm than good.”
In our time, Surrogate Foley, one of the ablest and most distinguished of our Surrogates, who did much to help improve and modernize the Decedent Estate Law and its administration, gave utterance to this extrajudicial statement in an address delivered at the Association of the Bar of the City of Hew York on April 22, 1926: “ There is, however, one reform on the subject which might be a wise thing to adopt. At the present time the statute requires that a will must be signed at the end. A considerable amount of litigation has arisen as to whether or not the instrument propounded was signed at the end. The statutory necessity that the will should be signed at the end has been construed most strictly by the courts. To such an extent has this rule been pursued that the appearance of any matter containing the appointment of an executor or a bequest appearing upon the paper after the signature has been held to void the entire instrument and destroy the clearly valid provisions preceding the subscription of the maker. There is neither necessity nor reason for such a rule.” (7 Lectures on Legal Topics, pp. 277, 281; see, also, 21 Corn. L. Q., 351.)
To say that the remedy is entirely with the Legislature is not an adequate answer, certainly not insofar as the precise question involved on this appeal is concerned. The Legislature did not say in words or in substance that the mere designation of executors, without anything more, following the signature, *33 invalidates the entire instrument. If that rule has any validity, it is based solely upon judicial decision, and judicial decision is appropriate to correct the error which opens the door to far greater fraud and a far greater miscarriage of justice than section 21 of the Decedent Estate Law was designed to prevent. Certainly no vested interest is involved — no interest that is worthy of protection. It can hardly be said that a decedent signed before the naming of executors in reliance on a holding that he would thereby be invalidating his entire testamentary instrument. As Mr. Justice Cardozo put it, “ We are told at times that change must be the work of statute, and that the function of the judicial process is one of conservation merely. But this is historically untrue, and were it true, would be unfortunate. Violent breaks with the past must come, indeed, from legislation, but manifold are the occasions when advance or retrogression is within the competence of judges as their competence has been determined by practice and tradition.” (The Paradoxes of Legal Science 7.)
In conclusion, therefore, I hold: (1) the naming of executors under the circumstances here presented did not constitute a material and integral part of the will and was not so considered by the testator; (2) there is no basis here presented for the application of the rule or dictum set forth in Sisters of Charity v. Kelly (67 N. Y. 409, supra); (3) such rule or dictum tends by judicial decision to perpetuate an evil which is far greater than that which section 21 of the Decedent Estate Law was designed to remedy, and that the rule in Sisters of Charity v. Kelly (supra) should not be extended beyond the precise language of that opinion and the precise facts there involved; (4) in any event, if that rule or dictum be considered as applicable to this case, it should, in all candor, be disavowed. “ There is neither necessity nor reason for such rule.” The decree appealed from should be reversed, with costs to the petitioner-appellant payable out of the estate, and the proceeding remitted to the court below for hearing on the other-objections interposed to the probate.
Dore and Cohn, JJ., concur with Callahan, J.; Shientag, J., dissents in opinion in which Van Voorhis, J., concurs.
Decree affirmed, with costs of this appeal to the respondents against the appellant.